UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOHO HOTEL OWNER, LLC<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; AND KELLY LOEFFLER, Administrator of the UNITED STATES SMALL BUSINESS ADMINISTRATION<br><br>    Defendants. | Case No. _____<br><br><br>**COMPLAINT AND PETITION FOR JUDICIAL REVIEW** |

Plaintiff, Soho Hotel Owner, LLC ("Soho Hotel" or "Plaintiff") files this Complaint and Petition for Judicial Review of the Order of the Office of Hearings and Appeals ("**OHA**") denying Plaintiff's appeal of its Paycheck Protection Program ("**PPP**") loan review decision issued by the United States Small Business Administration ("**SBA**") and alleges as follows:

## INTRODUCTION

This action seeks judicial review of the SBA's final decision that unlawfully failed to forgive a Second Draw PPP loan issued to Plaintiff during the COVID-19 pandemic under the Economic Aid to Hard-Hit Small Business, Non-Profits, and Venues Act ("**Economic Aid Act**"). More specifically, SBA unlawfully and improperly applied its Corporate Group Rule to Plaintiff to find that Plaintiff was not eligible to receive, and was ineligible for forgiveness of, the Second Draw PPP loan. Because the SBA's decision (1) rests on an unlawful SBA regulation that directly contravenes the governing statute and (2) arbitrarily and capriciously applies the SBA's regulation the Court should reverse the SBA's decision and direct it to forgive Plaintiff's Second Draw PPP loan.

## PARTIES

1. Plaintiff, Soho Hotel, is a Delaware limited liability company that currently owns 11 Howard, a hotel in New York City.

2. Defendant, SBA, is a federal agency created and governed by 15 U.S.C. § 633, et seq, which is authorized to administer the PPP.

3. Defendant, Kelly Loeffler, is the Administrator of the SBA and is being sued solely in her official capacity. 15 U.S.C. § 634(b)(1). Because she has the final authority for administering the PPP within the SBA, she is the proper defendant for causes of action brought under the Administrative Procedures Act ("**APA**").

## VENUE AND JURISDICTION

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Economic Aid Act and its implementing regulations.

5. SBA regulations, specifically 13 C.F.R. § 134.1211(g), provides that the agency's "[f]inal decisions may be appealed to the appropriate Federal district court."

6. The SBA's decisions in this matter became final on February 3, 2025, 30 days after the OHA's January 3, 2025 Initial Decision was issued affirming the SBA's loan review decision finding Plaintiff ineligible for loan forgiveness. Plaintiff has exhausted all administrative remedies, 13 C.F.R. § 134.1211(g), and SBA's issuance of the final decision constitutes final agency action that is judicially reviewable under the APA. *See* 5 U.S.C. §§ 704, 706.

7. Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(e) because Plaintiff received PPP loan funds in this judicial district and is a limited liability company that has a member who is a New York citizen.

8. This Court may grant declaratory relief, injunctive relief, and other appropriate relief pursuant to 28 U.S.C. § 2201-02 and 5 U.S.C. §§ 702-706.

## FACTUAL ALLEGATIONS

A. **THE CARES ACT AND ECONOMIC AID ACT.**

9. Due to the massive economic disruption caused by the COVID-19 pandemic, Congress passed the CARES Act in March 2020. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020), codified at 15 U.S.C. § 636(a)(36)-(37). A primary purpose of the CARES Act was to ensure continued employment and income for employees of American businesses.

10. Part of the CARES Act included the PPP, which provided SBA with the funding and authority to operate a temporary loan program designed to financially assist small businesses during the COVID-19 pandemic.

11. The PPP was not created as a standalone program, instead it was added into section 7(a) of the Small Business Act, a pre-existing statutory scheme that authorizes the SBA to issue loans, and guarantee loans made by private lenders, to qualifying businesses.

12. Under the PPP, the federal government guaranteed low interest loans made by SBA-approved participating lenders to eligible small businesses.

13. PPP loans issued to eligible small businesses could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.

14. Congress amended the CARES Act numerous times to appropriate additional funds and make other revisions.

15. The initial funding made available allowed eligible borrowers to receive First Draw PPP loans.

16. Subsequent funding made available allowed eligible borrowers to receive Second Draw PPP loans.

17. Pertinent here, Congress enacted the Economic Aid Act on December 27, 2020, and created the new Second Draw PPP Loan Program. 15 U.S.C. § 636(a)(37)(A)(iv)(I).

18. Borrowers were eligible for Second Draw PPP Loans if they: (1) previously received a First Draw PPP loan and used a full amount only for authorized uses; (2) had no more than 300 employees; and (3) could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. *See id*.

19. Moreover, under the Economic Aid Act, an eligible borrower was entitled to receive a Second Draw loan up to $2 million. 15 U.S.C. § 636(a)(37)(C).

**B.     PLAINTIFF'S SECOND DRAW PPP LOAN.**

20. Soho Hotel submitted a Paycheck Program Application Form for a Second Draw PPP loan on April 8, 2021.

21. Soho Hotel's Second Draw PPP Loan, Loan No. 9494718710, was approved by its lender, and loan proceeds were disbursed in the amount of $2,000,000 on April 12, 2021.

22. On June 21, 2022, Soho Hotel submitted its PPP Loan Forgiveness Application, which its Lender approved on November 21, 2022.

**C.     SBA'S FIRST DENIAL OF FORGIVENESS.**

23. After conducting a review of the Forgiveness Application, the SBA issued a loan review decision on December 13, 2023, denying Plaintiff's requests for loan forgiveness (the "**First Denial**"). The First Denial stated, in pertinent part, that:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $4,000,000 of 2nd draw PPP loans in the aggregate.

4

> The total Second Draw PPP loan amount for the Aby Rosen et al family is $12,680,496 which exceeds the maximum Second Draw allowable amount of $4,000,000.

A copy of the First Denial is attached as **Exhibit A**.

### D.    PLAINTIFF'S APPEAL TO THE OHA.

24. On January 15, 2024, Plaintiff appealed the First Denial to OHA ("**First Appeal Petition**"). Plaintiff sought reversal arguing, among other things, that the First Denial should be reversed because (1) the SBA has no statutory authority to issue an interim final rule imposing an aggregate limit of $4 million on Second Draw PPP Loans for a single undefined "corporate group;" and (2) even if the interim final rule were valid and enforceable, it does not apply here because Plaintiff is not part of a single corporate group.

25. After reviewing the First Appeal Petition, the SBA filed a Motion to Dismiss Paycheck Protection Program Appeal because SBA has "withdrawn its final SBA loan review decision on the PPP loan issued to [Plaintiff]."

26. An Order of Dismissal was subsequently entered on May 30, 2024, dismissing the appeal without prejudice to refiling, and the matter was remanded to the SBA for additional review.

### E.    SBA'S SECOND DENIAL OF FORGIVENESS.

27. On September 20, 2024, Plaintiff received notice from the Lender, stating that, after additional review, the SBA, again, declined to approve the Forgiveness Application. A copy of this Notice from the Lender is attached as **Exhibit B**.

28. In the SBA's Declination Letter (the "**Second Denial**"), the SBA concluded, in pertinent part, as follows:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $4,000,000 of 2nd draw PPP loans in the aggregate.

5

It is verified the borrower, Soho Hotel Owner LLC, is 100% owned by Aby Rosen and Michael Fuchs. In addition, the borrower is part of single corporate group having a combined majority ownership by Aby Rosen and Michael Fuchs.

Per borrower-submitted Entity Explanations, Organizational Charts and loan applications, SBA Form 2483, it is confirmed that Aby Rosen and Michael Fuchs, through direct and indirect ownership, are the combined majority owners of at least six entities which received second draw PPP loans totaling $10,680,496. The combined ownership by those two individuals in each entity within the corporate group results in majority ownership of each of those entities.

***

Per the submitted loan application, SBA Form 2483-SD, the Borrower applied for this loan on March 16, 2021, which is after the corporate group received the maximum allowable amount of second draw PPP funds on or around February 11, 2021. Therefore, it is verified that Borrower was not eligible to receive this PPP loan and subsequently is not eligible for forgiveness.

A copy of the Second Denial is attached as **Exhibit C**.

29. The six entities and loans referenced by the SBA are reflected in the below chart:

| Entity | Date Funded | Loan Amount |
| --- | --- | --- |
| 2201 Collins Fee LLC | February 1, 2021 | $2,000,000 |
| GPH Investors LLC | February 11, 2021 | $2,000,000 |
| Becker-Paramount Fee LLC | March 10, 2021 | $2,000,000 |
| RFR Realty LLC | March 25, 2021 | $1,722,876 |
| RFR Holding LLC | March 25, 2021 | $957,620 |
| Soho Hotel Owner LLC | April 12, 2021 | $2,000,000 |

**F.     PLAINTIFF APPEALS THE SECOND DENIAL TO THE OHA, WHICH AFFIRMS THE SBA'S DECISION.**

30. Plaintiff appealed the Second Denial to the OHA (the "**Second Appeal Petition**") arguing that the SBA's decision denying Plaintiff's eligibility for a Second Draw PPP Loan and declining Plaintiff's request for loan forgiveness under the PPP should be reversed because (1) the corporate group limitation in the interim final rule is not valid and enforceable; (2) even if the interim final rule were valid and enforceable, it does not apply here because Plaintiff is not part of

a "single corporate group;" and (3) SBA's reliance on common ownership to establish a corporate group is contrary to law and cannot be enforced.

31.  The SBA subsequently timely filed a response to Second Appeal Petition.

32.  Subsequently, on January 3, 2025, the OHA issued its final decision, concluding, in pertinent part, as follows:

> While the term "common parent" is not specifically defined in the pertinent IFRs, again I point out that I am bound by SBA's interpretation of that term as a policy statement:
>
> A 'common parent' may be an individual, entity, or combination thereof, and there is no language in the IFR that defines that a "common parent" must be only one entity...the term "common parent" must be understood to include aggregated minority interests. (citation omitted).
>
> The organization charts in the AR and SAR submitted with the appeal establish the majority and minority interests of Aby Rosen and Michael Fuchs with respect to the LLCs which received Second Draw PPP loans totaling more than $10,000.000.00. Appellant signed its Second Draw PPP loan application on March 16, 2021 (AR at 3948-3953), a date after January 12, 2021, when IFR 27 became effective limiting businesses that are part of a single corporate to receive no more than $4,000,000.00 of Second Draw PPP loans in the aggregate. See 86 Fed. Reg. at 3716.
>
> Therefore, Appellant had an ample time to be aware of the requirements and make a decision on whether to proceed with the Loan before applying for it *See* 15 U.S.C. § 636(a)(36)(B); *see also* 85 Fed. Reg. 20812 [IFR 1]. Appellant has acknowledged that three other LLCs having direct or indirect ownership by Aby Rosen and Michael Fuchs had Second Draw PPP loans funded before March 16, 2021:
>
>> 2201 Collins Fee LLC, $2,000,00.00, funded February 1, 2021
>>
>> GPH Investors LLC, $2,000,000.00, funded February 11, 2021
>>
>> Becker-Paramount Fee LLC, $2,000,000.00, funded March 10, 2021
>
> Two other LLCs were funded after the Appellant:
>
>> RFR Realty LLC, $1,722,876.00, funded March 25, 2021
>>
>> RFR Holding LLC, $957,620.00, funded March 25, 2021
>
> Accordingly, as the Second Draw PPP loans of the first two of the LLCs noted above totaled $4,000,000.00, no other businesses in the same corporate group, including the Appellant and three LLCs. whose loans were disbursed after the

$4,000,00.00 corporate group loan limit prescribed in the applicable IFRs noted above was reached, would be eligible for Second Draw PPP loans.

A copy of the OHA decision is attached as **Exhibit D**.

## THE WAIVER OF THE AFFILIATION RULE APPLIES TO PLAINTIFF

33. Applicants seeking loans under the SBA's Section 7(a) loan program are subject to SBA's implementing regulations.

34. These regulations include the SBA's affiliation rules, which were enacted to determine whether a business qualifies as a small business concern under SBA's size standard.

35. Affiliation can be established in the following ways: (1) ownership; (2) stock options, convertible securities, and agreements to merge; (3) management; and (4) identity of interest. 13 C.F.R. § 121.301.

36. Affiliation based on ownership is determined as follows:

> [A] concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity.

If such an affiliation exists, the employees of a borrower and its affiliates are added together to determine if the entity meets the SBA size standard.

37. When the CARES Act was enacted, Congress provided in the governing provisions that PPP loans would be made "under the same terms, conditions, and processes" that applied to the SBA's preexisting 7(a) Loan Program. 15 U.S.C. § 636(a)(36)(B).

38. Accordingly, after Congress enacted the CARES Act, the SBA promulgated an interim final rule providing that a business "entity generally is eligible for the PPP if it, combined with its affiliates [as determined under 13 C.F.R. § 121.103], … has 500 or fewer employees." SBA, *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20,817, 20,818 (Apr. 15, 2020) (emphasis added).

39. Congress, however, recognizing the severe consequences of the COVID-19 pandemic on certain industries expressly provided that for NAICS 72 entities, which includes the hospitality industry, "the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan." 15 U.S.C. § 636(a)(36)(D)(iv)(I) (the "**Waiver of Affiliation Rule**").

40. The Wavier of Affiliation Rule was similarly adopted when Congress enacted Economic Aid Act governing, as applicable here, Second Draw PPP loans.

41. The Economic Aid Act provides that "[t]he waiver described in paragraph (36)(D)(iv) [of the CARES Act] shall apply for purposes of determining eligibility" of any hospitality business with 300 or fewer employees for Second Draw loans. 15 U.S.C. § 636(a)(37)(E).

42. Because the Waiver of Affiliation Rule applied to hospitality businesses receiving Second Draw Loans, each hospitality business, including Plaintiff—so long as it did not exceed 300 employees—was entitled to receive up to $2 million loan regardless of its affiliation with other businesses.

## THE CORPORATE GROUP RULE

43. The Economic Aid Act required the SBA to issue regulations to carry out its provision and amendments to the PPP.

44. Consistent with this directive, the SBA issued two Interim Final Rules.

45. The first Interim Final Rule ("**First Draw IFR**") titled, "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act," consolidates the previously issued Interim Final Rules and governs, among other things, the First Draw PPP Loans made under the Economic Aid Act. *See* 86 Fed. Reg. 3692-01 (Jan. 14, 2021).

46. The First Draw IFR states, among other things, that for First Draw PPP Loans "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." *Id*.

47. The First Draw IFR further states that "[f]or purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." *Id*. (emphasis added).

48. Moreover, the First Draw IFR describes the interplay between the Corporate Group Rule and Waiver of Affiliation Rule, stating as follows:

> SBA's affiliation rules, which relate to an applicant's eligibility for PPP loans, and any waiver of those rules under the CARES Act, continue to apply independent of this limitation. Businesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

*Id*.

49. The second Interim Final Rule titled, "Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans" ("**Second Draw IFR**"), implements the key provisions of Section 311 of the Economic Aid Act that address loan applications and applications for loan forgiveness submitted for Second Draw PPP Loans. *See* 86 Fed. Reg 3712-01 (Jan. 14, 2021).

50. Under the Second Draw IFR "businesses that are part of a single corporate group shall in no event receive more than $4,000,000 of Second Draw PPP Loans in the aggregate." *Id*.

51. "Corporate group has the same meaning as in subsection (B)(4)(f) of the [First Draw IFR]," i.e., borrower and other entities are part of a single corporate group "if they are majority owned, directly or indirectly, by a common parent." *Id*.; 86 Fed. Reg. 3692-01 (Jan. 14, 2021) (emphasis added).

10

## THE CORPORATE GROUP RULE WAS UNLAWFULLY AND WRONGFULLY APPLIED TO PLAINTIFF

52. Under the plain language of the Economic Aid Act, and the implementing regulations, for the Corporate Group Rule to apply to Plaintiff, the SBA was required to identify a "common parent" that has majority ownership in Plaintiff and other entities that constitute a corporate group receiving Second Draw PPP Loans. The SBA did not do so.

53. In fact, Plaintiff is not majority owned, directly or indirectly, by a common parent whose entities received more than $4 million in Second Draw PPP Loans in the aggregate.

54. Plaintiff is a stand-alone entity which has its own management and employees that is entirely separate from the other entities in which Mr. Fuchs and Mr. Rosen have an ownership interest.

55. Nonetheless, SBA—instead of complying with its own regulations—concluded that Plaintiff was part of corporate group because Mr. Fuchs and Mr. Rosen have "common ownership" with other entities that received more than $4 million in the aggregate.

56. SBA's reliance on "common ownership" to deny eligibility and loan forgiveness resulted in an improper and retroactive application of the Corporate Group Rule.

## COUNT I
## VIOLATION OF THE ADMINISTRATIVE
## PROCEDURE ACT, 5 U.S.C. § 706(2)(A)
## (SBA Exceeded Its Statutory Authority-Monetary Limitation)

57. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

58. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

11

59. In enacting rules and regulations, SBA may only exercise authority consistent with the authority conferred by statute.

60. The sole monetary limitation imposed by Congress for Second Draw PPP loans was that the "maximum loan amount" for eligible entities "is the lesser of" the payroll amount or $2 million. 15 U.S.C. § 637(a)(37)(C)(iv).

61. Nonetheless, the SBA modified the monetary limitations set by Congress by imposing an aggregate limit of $4 million on Second Draw PPP loans through the Corporate Group Rule, despite such monetary limitation appearing nowhere in the CARES Act, the Economic Aid Act, or any other applicable legislation.

62. Furthermore, nothing in the CARES Act or Economic Aid Act suggests that the maximum loan amount changes depending on the borrower' relationship with other businesses.

63. But that is precisely what the Corporate Group Rule does. Eligible entities that are deemed part of a "Corporate Group" are limited to $4 million in the aggregate.

64. The purported $4 million corporate group rule, in effect, renders PPP funds that would otherwise be available to qualifying small businesses (like Plaintiff) unavailable by agency fiat.

65. Accordingly, the Corporate Group Rule is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

66. Therefore, the Corporate Group Rule must be vacated and set aside and not used as a basis to deny Plaintiff's request for forgiveness of its Second Draw PPP Loan.

## COUNT II
## VIOLATION OF THE ADMINISTRATIVE
## PROCEDURE ACT, 5 U.S.C. § 706(2)(A)
### (Notice and Comment)

67.Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

68.Under the APA, except in limited circumstances, whenever an agency promulgates a rule that intends to create new law, rights, or duties, it must engage in a process known as notice-and-comment rulemaking.

69.The Economic Aid Act, which authorizes Second Draw PPP loans, provides as follows:

> SEC. 303. EMERGENCY RULEMAKING AUTHORITY.
>
> Not later than 10 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this Act and the amendments made by this Act without regard to the notice requirements under section 553(b) of title 5, United States Code.

Consolidated Appropriations Act, 2021, PL 116-260, December 27, 2020, 134 Stat 1182.

70.Accordingly, the Economic Aid Act allows the Administrator to issues regulations without complying with the notice and comment rulemaking process so long as the regulations were issued within 10 days after the enactment of the Economic Aid Act.

71.The Second Draw IFR, which contains the Corporate Group Rule was issued on January 14, 2021, and submitted to the Federal Register on January 12, 2021. *See* 86 Fed. Reg. 3712 (Jan. 14, 2021). It gives as its sole basis for dispensing without notice and comment Economic Aid Act § 303.

72.However, the 10-day limit to issue rules without notice and comment expired on January 6, 2021, eight days before the Second Draw IFR was issued.

13

73. Because the SBA missed the deadline, the "notice and comment" rules governed and the SBA could only issue the rule through normal notice and comment rulemaking or set out in the preamble to the rule why one of three notice and comment rulemaking exceptions applied. It did neither.

74. Therefore, Second Draw IFR was not "duly promulgated" and the SBA lacked authority to impose the Corporate Group requirement on Plaintiff and the OHA's decision must be vacated and set aside, and may not serve as a basis to deny Plaintiff's request for forgiveness of its Second Draw PPP Loan.

## COUNT III
## VIOLATION OF THE ADMINISTRATIVE
## PROCEDURE ACT, 5 U.S.C. § 706(2)(A)
### (Violation of Affiliation Waiver)

75. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

76. The SBA's affiliation rules were enacted to determine whether a business qualifies as a small business concern under SBA's size standard.

77. When Congress enacted the CARES Act and Economic Aid Act, it made clear that the affiliation rules do not apply to NAICS Code 72 entities, which includes entities in the hospitality industry such as Plaintiff.

78. Nonetheless, in or around July 2023, the SBA announced—without issuing a rule at all—that "Corporate Group" was being defined as "any single individual OR multiple investors that invest more than once together and own more than 50% of entities ("Commonly Owned")."

79. Utilizing "common ownership" to determine if an entity is part of a corporate group and thus ineligible for a Second Draw PPP loan, effectively writes the NAICS Code 72 Waiver of Affiliation Rule out of the statute. The SBA cannot do so.

14

80. In fact, the SBA's own rules acknowledge that "SBA's affiliation rules, which relate to an applicant's eligibility for PPP loans, and any waiver of those rules under the CARES Act, continue to apply independent of this limitation." 86 Fed. Reg. 3692, 3702.

81. Businesses that are eligible for loans as NAICS 72 entities based on the Waiver of Affiliation Rule, become ineligible for loan forgiveness under the corporate group limitation because of their "common ownership," i.e., affiliation.

82. Nothing in the CARES Act or Economic Aid Act allows for such a result.

83. Not only is SBA rewriting existing law with its newly announced definition of "Corporate Group," but it is unlawfully applying it in a retroactive manner in direct contravention of the Administrative Procedure Act. 5 U.S.C. § 551(4).

84. Finally, the new definition of "Corporate Group" is directly contrary to SBA's repeated assurances to borrowers that they could rely on the rules and regulations in effect on the day such borrowers applied for assistance, which is exactly what Plaintiff did when it applied for its Second Draw PPP Loan. *See, e.g.*, SBA FAQs at Q. 17 (Dec. 9, 2020) ("Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application.") (emphasis added)); SBA FAQ 17 (July 29, 2021) (same).

85. Accordingly, the SBA improperly conducted a common ownership analysis in direct contravention of Waiver of Affiliation Rule in the CARES Act and Economic Aid Act requiring that the OHA decision be vacated and set aside and not be used as a basis to deny Plaintiff's request for forgiveness of its Second Draw PPP Loan.

## COUNT IV
## SBA'S DETERMINATION THAT PLAINTIFF IS INELIGIBLE FOR LOAN FORGIVENESS IS ARBITRARY AND CAPRICIOUS, AN ABUSE OF DISCRETION, AND OTHERWISE NOT IN ACCORDANCE WITH APPLICABLE LAW

86. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

87. The Corporate Group Rule was SBA's sole basis for refusing to forgive Plaintiff's Second Draw PPP Loan.

88. Even if the Corporate Group Rule were valid and enforceable generally, it was applied improperly to Plaintiff's Second Draw PPP Loan and request for forgiveness.

89. The Corporate Group Rule provides that "businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent," and if those businesses are majority owned by a "common parent," they are subject to an aggregate limitation of $4 million in PPP loans.

90. Without guidance defining the terms "corporate group" and "common parent," the plain meaning of these terms must be applied to determine if the Plaintiff falls under the corporate group rule.

91. Corporate group—under its plain meaning—(1) consists of a parent corporation and subsidiaries that are wholly or majority owned by the parent; and (2) functions as a single economic entity, including for financial reporting and tax issues (often filing a consolidated tax return, among other things).

92. "Common parent" has been defined as the "corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member." *See e.g.*, 48 C.F.R. § 4.901.

93. Majority ownership generally refers to ownership interests in an entity that totals more than 50%.

94. Here, there is no evidence that Plaintiff is majority owned, directly or indirectly, by a common parent whose entities received more than $4 million in Second Draw PPP Loans in the aggregate.

95. Plaintiff instead is a stand-alone entity which has its own management and employees that is entirely separate from the other entities in which Mr. Fuchs and Mr. Rosen have an ownership interest.

96. Nowhere in the SBA's Second Denial or the OHA's decision does it identify the common parent or explain how Plaintiff is "majority owned, directly or indirectly, by a common parent."

97. Because Plaintiff does not share a "common parent" with any other entity, there is no legal basis to hold Plaintiff to the purported $4,000,000 corporate group limitation.

98. Thus, Plaintiff is entitled to an order reversing OHA's decision and granting forgiveness of Plaintiff's Second Draw PPP Loan in its entirety.

## COUNT V
## DECLARATORY JUDGMENT

99. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

100. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

101. There is an actual and existing controversy between the parties as to the correctness of the SBA's decision to apply the Corporate Group Rule to deny forgiveness of Plaintiff's Second Draw loan in its entirety.

102. The controversy is of sufficient immediacy to warrant the issuance of a declaratory judgment.

103. A declaratory judgment will effectively settle the controversy between the parties regarding their legal rights, and thus obviate any future harm or uncertainty.

104. As a result of the foregoing, Plaintiff is entitled to a declaratory judgment that the Corporate Group Rule cannot be applied to businesses protected by the Waiver of Affiliation Rule and declaring that the SBA's application of the Corporate Group Rule to Plaintiff's Second Draw PPP loan was legal error, was arbitrary and capricious, was made in excess of SBA's statutory authority, and constituted an abuse of discretion.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, Soho Hotel Owner, requests judgment against Defendants in its favor as follows:

1. A declaration that the Corporate Group Rule should be and is vacated and set aside;

2. A declaration that the Corporate Group Rule may not be used as a basis to deny Plaintiff's request for loan forgiveness of its Second Draw PPP Loan in the amount of $2,000,000;

3. An Order reversing SBA's Second Denial and OHA's Order affirming SBA's Second Denial;

4. An Order directing SBA to forgive Plaintiff's Second Draw PPP Loan in the amount of $2,000,000;

5. Reimbursement to Plaintiff of any sums repaid on any of the Second Draw PPP loans, plus interest, in an amount to be proven;

6. An award of Plaintiff's costs and reasonable attorney's fees to the extent permitted by law; and

7. Grant such other relief as this Court may deem just and proper.

DATED:  April 4, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Daniel Filor*
     DANIEL P. FILOR
     CHARLES J. BERK
     One Vanderbilt Avenue
     New York, New York 10017
     Telephone: (212) 801-9200
     Email: filord@gtlaw.com
            berkc@gtlaw.com

*Counsel for Plaintiff*