**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SOHO HOTEL OWNER, LLC,

      Plaintiff,

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION; AND KELLY
LOEFFLER, Administrator of the UNITED
STATES SMALL BUSINESS
ADMINISTRATION

      Defendants.

Case No. 1:25-cv-2838-JSR

**MEMORANDUM OF LAW IN**
**SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

GREENBERG TRAURIG, LLP
Daniel P. Filor
Kimberly S. Mello (*pro hac vice*)
*Attorneys for Plaintiff, Soho Hotel Owner, LLC*
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
filord@gtlaw.com
mellok@gtlaw.com

# TABLE OF CONTENTS

**Page**

**Table of Authorities** ....................................................................................................... iii

**FACTUAL BACKGROUND** ........................................................................................... 1

    **I.**    **OVERVIEW OF THE COVID-19 PANDEMIC AND CONGRESS'S RESPONSE.** ....................................................................................... 1

        **A.**    **Congress Enacts The CARES Act and Economic Aid Act To Provide Much Needed Relief For American Businesses.** ................................. 1

    **II.**    **CONGRESS INCLUDES SPECIFIC PROVISIONS IN THE PPP TO PROTECT THE HOSPITALITY INDUSTRY.** .......................................... 3

        **A.**    **The SBA's Affiliation Rules Under The Section 7(a) Loan Program And PPP.** ........................................................................................ 3

        **B.**    **Congress Expressly Exempts Qualified Businesses In the Accommodation And Food Services Industries From The Affiliation Rules For PPP Loans.** ............................................................................ 4

    **III.**    **SBA ISSUES THE CORPORATE GROUP RULE IN DIRECT CONTRAVENTION OF THE AFFILIATION WAIVER.** ....................... 5

    **IV.**    **SOHO HOTEL'S SECOND DRAW PPP LOAN** .................................... 6

**STANDARD OF REVIEW** .............................................................................................. 7

**LEGAL ARGUMENT** ...................................................................................................... 9

    **I.**    **THE SBA EXCEEDED ITS STATUTORY AUTHORITY WHEN IT ISSUED THE CGR.** ..................................................................................... 9

        **A.**    **The SBA's Issuance Of The CGR Violates The Affiliation Waiver.** ............... 9

        **B.**    **Applying The CGR To NAICS 72 Entities Is Contrary To The Text, Structure, And Purpose Of The CARES Act And Economic Aid Act.** ......... 11

        **C.**    **SBA's Position That It Did Not Act In Excess Of Its Authority In Issuing The CGR Should Be Rejected.** ............................................... 13

    **II.**    **THE SBA VIOLATED ITS RULEMAKING DUTIES IN ISSUING THE CGR.** ...................................................................................................... 17

    **III.**    **THE SBA ERRED IN APPLYING THE CGR TO SOHO HOTEL.** ..................... 18

**TABLE OF CONTENTS**
**(Continued)**

Page

    A.    **This Court Should Adhere To The Plain Meaning Of The CGR.** ................. 18

    B.    **SBA's Construction Of The CGR Is Wholly Unreasonable And Effectively Improperly Amends The Regulation.** .............................................. 21

IV.    **THE CGR IS ARBITRARY AND CAPRICIOUS AND MUST BE SET ASIDE.** ................................................................................................... 24

**CONCLUSION** ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*35 State Street Hotel Partners, LLC v. Loeffler*,
  2025 WL 870535 (D.C. Mar. 20, 2025) ...........................................................14, 15, 16, 17, 25

*Accordius Health at Asheville, LLC v. U.S. Small Bus. Admin.*,
  2025 WL 1503583
  (W.D. N.C. Apr. 8, 2025) .............................................................................. *passim*

*Action on Smoking & Health v. Civil Aeronautics Bd.*,
  713 F.2d 795 (D.C. Cir. 1983) ....................................................................................18

*Air Excursions LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) .....................................................................................13

*American Silicon Tech. v. U.S.*,
  334 F.3d 1033 (Fed. Cir. 2003)....................................................................................19

*Azar v. Allina Health Servs.*,
  587 U.S. 566 (2019)......................................................................................................13

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988)......................................................................................................22

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
  458 F. Supp. 3d 1044 (E.D. Wis. 2020)......................................................................16

*Chen v. Bd. of Immigr. Appeals*,
  164 F. Supp. 3d 612 (S.D.N.Y. 2016).........................................................................8

*Children's Hosp. of the King's Daughters, Inc. v. Azar*,
  896 F.3d 615 (4th Cir. 2018) .......................................................................................17

*City Club of New York v. United States Army Corps of Eng'rs.*,
  246 F. Supp. 3d 860 (S.D.N.Y. 2017) (Schofield, J.)..............................................9

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*,
  367 U.S. 316 (1961)......................................................................................................14

*Consumer Fin. Protection Bur. v. NDG Fin. Corp.*,
  2018 WL 1605067
  (S.D.N.Y. Mar. 12, 2018) ............................................................................................19

*Durable Mfg. Co. v. U.S. Dep't. of Labor*,
  578 F.3d 497 (7th Cir. 2009) .......................................................................................22

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*DV Diamond Club of Flint, LLC v. SBA,*
  960 F.3d 743 (6th Cir. 2020) ..........................................................13, 16

*FCC v. Prometheus Radio Project,*
  592 U.S. 414 (2021)...........................................................................9

*Forest View Rehab. & Nursing Ctr., LLC v. U.S. Small Bus. Admin.,*
  2024 WL 5247837
  (N.D. Ill. Dec. 30, 2024) .............................................................16, 24

*Gonzales v. Oregon,*
  546 U.S. 243 (2006)..........................................................................13

*Heating, Air Conditioning & Refrigeration Distribs. Int'l v. EPA,*
  71 F.4th 59 (D.C. Cir. 2023) ............................................................11

*In re Roman Cath. Church of Archdiocese of Santa Fe,*
  615 B.R. 644 (Bankr. D.N.M. 2020) .................................................16

*In re Skefos,*
  2020 WL 2893413
  (Bankr. W.D. Tenn. June 2, 2020).....................................................16

*Kisor v. Wilkie,*
  588 U.S. 558 (2019)................................................................. *passim*

*La. Pub. Serv. Comm'n v. FCC,*
  476 U.S. 355 (1986)..........................................................................11

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024).................................................................8, 9, 11

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm*
  *Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) .............................................24

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
  583 U.S. 109 (2018)...........................................................................9

*Perez v. Mortg. Bankers Ass'n,*
  575 U.S. 92 (2015)............................................................................17

*Ragsdale v. Wolverine World-Wide, Inc.,*
  535 U.S. 81 (2002)............................................................................14

*Samantar v. Yousuf,*
  560 U.S. 305 (2010)..........................................................................11

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*SAS Inst., Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ................................................................. 10, 12

*SH Synergy, LLC v. United States*,
  165 Fed. Cl. 745 (2023) ...................................................................... 19

*Smith v. U.S.*,
  508 U.S. 223 (1993) ............................................................................. 19

*State v. U.S. Immigr. & Customs Enf't*,
  438 F. Supp. 3d 216 (S.D.N.Y. 2020) .................................................... 8

*Wirth v. Sun Healthcare Grp., Inc.*,
  389 P.3d 295 (N.M. Ct. App. 2016) ..................................................... 19

**Statutes**

5 U.S.C. § 553 ......................................................................................... 2

5 U.S.C. § 702 ......................................................................................... 8

15 U.S.C. § 634 ....................................................................................... 9

15 U.S.C. § 636 ............................................................................... *passim*

15 U.S.C. § 9012 ............................................................................... 2, 17

Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-
  136, 134 Stat. 281 (2020) ..................................................................... 1

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182
  (2020).............................................................................................. 2, 18

Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, Pub.
  L. No. 116-260, § 303, 134 Stat. 1182, 1374–75 (2020). .......................... 2

Pub. L. No. 116-136, title I, 134 Stat. 281, 286 (2020).. ............................ 24

**Rules & Regulations**

13 C.F.R. § 121.103 ................................................................................. 6

13 C.F.R. § 121.201 ................................................................................. 4

13 C.F.R. § 121.301 ..................................................................... 3, 4, 6, 10

48 C.F.R. § 4.901 ................................................................................... 20

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

85 Fed. Reg. 26324 (May 4, 2020) ..................................................................... *passim*

86 Fed. Reg. 3692 (Jan. 14, 2021) ..................................................................... *passim*

86 Fed. Reg. 3712 (Jan. 14, 2021) ..........................................................................3, 5

**Other Authorities**

*Common Parent*, LAW INSIDER, www.lawinsider.com/dictionary/common-parent
(last visited July 28, 2025) ..........................................................................20

*Majority*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
webster.com/dictionary/majority (last visited July 28, 2025) ..................20

*Majority Ownership*, LAW INSIDER,
https://www.lawinsider.com/dictionary/majority-ownership (last visited July
28, 2025) ......................................................................................................20

Ryan Ansell & John P. Mullins, U.S. Bureau of Labor Statistics, *COVID-19 Ends
Longest Employment Recovery and Expansion in CES History, Causing
Unprecedented Job Losses in 2020*, Monthly Lab. Rev. (June 2021),
https://tinyurl.com/5ckx87zn ........................................................................4

*Parent Corporation*, BLACK'S LAW DICTIONARY 418 (10th ed. 2014) ........................20

Phillip I. Blumberg, *Limited Liability and Corporate Groups*, 11 Journal of
Corporation Law 573, 605 (1986) ...............................................................19

U.S. Small Business Administration, Paycheck Protection Program (PPP)
Frequently Asked Questions (FAQs) at Q. 17 (Dec. 9, 2020),
https://www.sba.gov/sites/default/files/2020-
12/Final%20PPP%20FAQs%20%28December%209%202020%29-508.pdf
(last visited July 25, 2025) ...........................................................................23

U.S. Small Business Administration, Paycheck Protection Program (PPP)
Frequently Asked Questions (FAQs) at Q. 17 (July 29, 2021),
https://www.sba.gov/sites/default/files/2021-
07/FINAL%20FAQ%20Update%207.29.21-508.pdf (last visited July 25,
2025) ............................................................................................................23

U.S. Dep't of the Treasury, *Paycheck Protection Program*,
https://tinyurl.com/yck57pu2 (last visited July 24, 2025) ...........................1

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

U.S. Small Bus. Admin., *Affiliation Rules Applicable To U.S. Small Business Administration Paycheck Protection Program*, Affiliation Rules for Paycheck Protection Program | U.S. Small Business Administration (last visited July 28, 2025) ............................................................................................................................4

Plaintiff Soho Hotel Owner LLC ("Plaintiff"), by counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Memorandum requesting that the Court enter Summary Judgment in favor of Plaintiff and against the United States Small Business Administration ("SBA"), finding that the SBA's issuance of the Corporate Group Rule and its application to Plaintiff's Paycheck Protection Program ("PPP") loan forgiveness applications have no basis in fact, are arbitrary and capricious, an abuse of discretion, and not in accordance with applicable law. Specifically, the SBA exceeded its authority when issuing the Rule, contravened Congress's duly enacted affiliation waiver, and erred in applying the Rule to Plaintiff.

## FACTUAL BACKGROUND[1]

## I. OVERVIEW OF THE COVID-19 PANDEMIC AND CONGRESS'S RESPONSE.

### A. Congress Enacts The CARES Act and Economic Aid Act To Provide Much Needed Relief For American Businesses.

COVID-19 emerged in the United States in early 2020, significantly impacting the lives of all Americans. On March 27, 2020, to avert the unfolding economic catastrophe created by the COVID-19 pandemic and "keep[] American workers paid and employed," the President signed the CARES Act into law, providing emergency assistance for businesses affected by the pandemic. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (enacted). One of the Act's cornerstone programs was the PPP, which was intended to provide qualified businesses with "the resources they need to maintain their payroll, hire back employees who may have been laid off, and cover applicable overhead."[2]

---

[1] Soho Hotel's Rule 56.1 Statement of Undisputed Material Facts In Support Of Motion For Summary Judgment ("Statement of Undisputed Material Facts") will be cited to as ("SOF").

[2] U.S. Dep't of the Treasury, *Paycheck Protection Program*, https://tinyurl.com/yck57pu2 (last visited July 24, 2025).

The PPP was placed within the SBA's existing Section 7(a) program but, importantly, had more expansive eligibility criteria than other Section 7(a) program loans, making the loans widely available to small businesses across the commercial spectrum. 15 U.S.C. § 636(a)(36)(B) (emphasis added) (stating that "**except as otherwise provided in this paragraph**, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection") (emphasis added). Specifically, business concerns were eligible to receive what is commonly referred to as "First Draw PPP Loans" up to $10 million if they employed not more than 500 employees.[3] *See* 15 U.S.C. § 636(a)(36)(D)(i)(I), (II).

In December 2020, nine months after the CARES Act became law, Congress enacted the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act") to authorize a second set of PPP loans, *i.e.*, Second Draw PPP Loans. 15 U.S.C. § 636(a)(37). Congress provided that a business's eligibility for Second Draw PPP Loans should generally be evaluated under the same terms as First Draw PPP Loans, but subject to slightly more restrictive criteria for eligibility and a lower maximum loan amount. *See* 15 U.S.C. § 636(a)(37)(B). More specifically, businesses were eligible for Second Draw PPP Loans if they: (1) previously received a First Draw PPP Loan and used the full amount only for authorized uses; (2) had no more than 300 employees; and (3) could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. *See* 15 U.S.C. § 636(a)(37)(A)(iv).

To ensure the CARES Act and Economic Aid Act were properly and swiftly implemented, Congress granted the SBA authority to issue regulations without regard to the notice requirements under the Administrative Procedures Act ("APA"). *See* 15 U.S.C. § 9012; Economic Aid to Hard-

---

[3] Borrowers could also be deemed eligible for First Draw PPP Loans based on (1) average annual receipts; and (2) an alternative size standard based on Tangible Net Worth and average Net Income. *Id.*

Hit Small Businesses, Nonprofits, and Venues Act, Pub. L. No. 116-260, § 303, 134 Stat. 1182, 1374–75 (2020).

## II.   CONGRESS INCLUDES SPECIFIC PROVISIONS IN THE PPP TO PROTECT THE HOSPITALITY INDUSTRY.

### A.   The SBA's Affiliation Rules Under The Section 7(a) Loan Program And PPP.

Under the Section 7(a) loan program, the SBA typically takes into account a qualified business's *affiliates* when determining whether the business meets an applicable size criterion for a loan—that is, "[t]he size of the applicant <u>combined with its affiliates</u> must not exceed the [applicable] size standard," here, 300 employees for Second Draw PPP Loans. 13 C.F.R. § 121.301(a)(2), (b)(1) (emphasis added).

SBA implemented regulations under the CARES Act and Economic Aid Act adopting the affiliation-based rules in the Section 7(a) loan program.  The regulations state, in pertinent part, as follows:

> In most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP. Under SBA rules, entities may be considered affiliates based on factors including but not limited to stock ownership, overlapping management, and identity of interest.

*See* Business Loan Program Temporary Changes: Paycheck Protection Program As Amended By the Economic Aid Act, 86 Fed. Reg. 3692, 3698-99 (Jan. 14, 2021) (footnotes omitted). SBA further made clear in its regulations the affiliation rules apply to Second Draw PPP loans authorized under the Economic Aid Act, providing, in part, as follows:

> The same affiliation rules that apply to First Draw PPP Loans apply to Second Draw PPP Loans, except as provided in this IFR. As with First Draw PPP Loans, in most cases, a borrower is considered together with its affiliates to determine eligibility for the PPP.

Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3714 (Jan. 14, 2021) (footnote omitted).

In addition to these regulations, the SBA issued guidance listing the following four applicable affiliation tests under the PPP: (1) affiliation based on ownership; (2) affiliation arising under stock options, convertible securities and agreements to merge; (3) affiliation based on management; and (4) affiliation based on identity of interest.[4]

### B. Congress Expressly Exempts Qualified Businesses In the Accommodation And Food Services Industries From The Affiliation Rules For PPP Loans.

Under the Section 7(a) loan program, as well as the PPP, entities in the "Accommodation and Food Services" industry are assigned a NAICS code beginning with "72".  *See* 13 C.F.R. § 121.201. There is no dispute that Soho Hotel has a NAICS 72 designation.

When the CARES Act was enacted, Congress recognized that NAICS 72 entities, such as hotels, are often affiliated with one another—for example, through common "ownership," 13 C.F.R.§ 121.301(f)(1)(iii)—and, consequently, many individual hotels would not meet the size-criterion for eligibility, *e.g.*, no more than 300 employees, under the SBA's affiliation rules. As a result, many hotels with affiliates would be ineligible for PPP loans despite suffering "the greatest job losses" of any industry.[5] To address this problem—and ensure that the SBA's affiliation rules would not prevent hotels and other NAICS 72 entities from receiving PPP loans—Congress enacted an affiliation waiver ("Affiliation Waiver") for both First Draw PPP Loans and Second Draw PPP Loans. With respect to First Draw PPP Loans, 15 U.S.C. § 636(a)(36)(D)(iv) provides as follows:

(iv) Waiver of affiliation rules

---

[4] *See* U.S. Small Business Administration, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program*, https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program (last visited July 28, 2025); 86 Fed. Reg. 3692 (Jan. 14, 2021).

[5] Ryan Ansell & John P. Mullins, U.S. Bureau of Labor Statistics, *COVID-19 Ends Longest Employment Recovery and Expansion in CES History, Causing Unprecedented Job Losses in 2020*, Monthly Lab. Rev. (June 2021), https://tinyurl.com/5ckx87zn.

> During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for--
>
> (I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72;

For Second Draw PPP Loans, Congress expressly stated that "[t]he waiver described in paragraph (36)(D)(iv) shall apply for purposes of determining eligibility under this paragraph." 15 U.S.C. § 636(a)(37)(E)(i). The Affiliation Waiver thus operated to ensure that First Draw and Second Draw PPP loans would be broadly available to hotels, notwithstanding present or future affiliation-based restrictions on loan eligibility.

## III.    SBA ISSUES THE CORPORATE GROUP RULE IN DIRECT CONTRAVENTION OF THE AFFILIATION WAIVER.

Despite Congress's clear mandate in enacting the Affiliation Waiver, the SBA issued a Corporate Group Rule ("CGR"), imposing a new affiliation-based limitation on PPP eligibility, with no carveout for NAICS 72 entities.  With respect to First Draw PPP loans the CGR provided as follows:

> Businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP [First Draw] loans in the aggregate.

85 Fed. Reg. 26324, 26324–25 (May 4, 2020). For Second Draw PPP Loans, the regulation provided that:

> Businesses that are part of a single corporate group shall in no event receive more than $4,000,000 of Second Draw PPP loans in the aggregate.

86 Fed. Reg. 3712, 3720 (Jan. 14, 2021).  For both First Draw and Second Draw PPP loans the SBA regulation states that "businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." 85 Fed. Reg. 26324, 26324–25; 86 Fed. Reg. 3712, 3720.

In implementing the CGR, the SBA applies the affiliation rules to determine if multiple entities share "common ownership." *See*, *e.g.*, 13 C.F.R. § 121.103(a)(8) (cross-referencing 13 C.F.R. § 121.301); § 121.301(f)(1)(iii) (businesses "are affiliated" for purposes of eligibility for SBA's "Business Loan[s]" "[w]hen an individual owns more than 50 percent" of both businesses); 86 Fed. Reg. 3692 at 3699 ("Business Loan[s] … include the PPP"). Inexplicably, however, the SBA's regulation further provides that "[b]usinesses are subject to this" affiliation-based limitation "*even if* [they] are eligible for the waiver-of-affiliation provision" under the CARES Act and Economic Aid Act. 85 Fed. Reg. 26324, 26325 (emphasis added). In other words, NAICS 72 entities, such as Soho Hotel, are subject to the CGR even though Congress specifically exempted them from such restrictions by enacting the Affiliation Waiver.

## IV.  SOHO HOTEL'S SECOND DRAW PPP LOAN[6]

Based on the CGR—and ignoring the Affiliation Waiver—the SBA, in its final loan review decision ("FLRD") concluded, in pertinent part, as follows:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $4,000,000 of 2nd draw PPP loans in the aggregate.
>
> It is verified the borrower, Soho Hotel Owner LLC, is 100% owned by Aby Rosen and Michael Fuchs. In addition, the borrower is part of single corporate group having a combined majority ownership by Aby Rosen and Michael Fuchs.
>
> Per borrower-submitted Entity Explanations, Organizational Charts and loan applications, SBA Form 2483, it is confirmed that Aby Rosen and Michael Fuchs, through direct and indirect ownership, are the combined majority owners of at least six entities[7] which received second draw PPP loans totaling $10,680,496. The combined ownership by those two individuals in each entity within the corporate group results in majority ownership of each of those entities.

*** 

---

[6] A detailed procedural history of the proceedings below is set forth in the Statement of Undisputed Material Facts. *See* SOF ¶¶ 6-20.

[7] A chart listing the six entities referenced by the SBA, along with the PPP loan amount, date funded and ownership interests of Aby Rosen ("Mr. Rosen") and Michael Fuchs ("Mr. Fuchs") is contained in the Statement of Undisputed Material Facts. *See* SOF ¶ 15.

Per the submitted loan application, SBA Form 2483-SD, the Borrower applied for this loan on March 16, 2021, which is after the corporate group received the maximum allowable amount of second draw PPP funds on or around February 11, 2021. Therefore, it is verified that Borrower was not eligible to receive this PPP loan and subsequently is not eligible for forgiveness.

(SOF ¶ 14). The OHA subsequently affirmed the FLRD concluding, in pertinent part:

While the term "common parent" is not specifically defined in the pertinent IFRs, again I point out that I am bound by SBA's interpretation of that term as a policy statement:

A "common parent" may be an individual, entity, or combination thereof, and there is no language in the IFR that defines that a "common parent" must be only one entity...the term "common parent" must be understood to include aggregated minority interests. (citation omitted).

The organization charts in the AR and SAR submitted with the appeal establish the majority and minority interests of Aby Rosen and Michael Fuchs with respect to the LLCs which received Second Draw PPP loans totaling more than $10,000.000.00. Appellant signed its Second Draw PPP loan application on March 16, 2021 (AR at 3948-3953), a date after January 12, 2021, when IFR 27 became effective limiting businesses that are part of a single corporate to receive no more than $4,000,000.00 of Second Draw PPP loans in the aggregate. See 86 Fed. Reg. at 3716.

Therefore, Appellant had an ample time to be aware of the requirements and make a decision on whether to proceed with the Loan before applying for it *See* 15 U.S.C. § 636(a)(36)(B); *see also* 85 Fed. Reg. 20812 [IFR 1]. Appellant has acknowledged that three other LLCs having direct or indirect ownership by Aby Rosen and Michael Fuchs had Second Draw PPP loans funded before March 16, 2021:

2201 Collins Fee LLC, $2,000,00.00, funded February 1, 2021

GPH Investors LLC, $2,000,000.00, funded February 11, 2021

Becker-Paramount Fee LLC, $2,000,000.00, funded March 10, 2021

Two other LLCs were funded after the Appellant:

RFR Realty LLC, $1,722,876.00, funded March 25, 2021

RFR Holding LLC, $957,620.00, funded March 25, 2021

(SOF ¶ 20). After this adverse decision was issued, Soho Hotel filed its Petition in this Court.

## STANDARD OF REVIEW

Under the APA, every person suffering a legal wrong because of agency action, within the meaning of a relevant statute, is entitled to judicial review. *See* 5 U.S.C. § 702.  Under the APA, a "reviewing court shall ... hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Judicial review under the APA is confined to the administrative record on which the agency's decision was based. *See State v. U.S. Immigr. & Customs Enf't*, 438 F. Supp. 3d 216, 217 (S.D.N.Y. 2020). Accordingly, the usual summary judgment standard is not employed—instead, the Court decides, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *See Chen v. Bd. of Immigr. Appeals*, 164 F. Supp. 3d 612, 617 (S.D.N.Y. 2016).

When the lawfulness of an agency action turns on the meaning of a **statutory** provision, the reviewing court applies a de novo standard of review and does not defer to the agency's interpretation. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024) (Roberts, J.) "[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. The reviewing court's role is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395.

When reviewing an agency's interpretation of its **regulation**, this Court must determine whether the agency's interpretation should be afforded deference. This deference, referred to as *Auer* deference,[8] is only afforded to the agency when there is a "genuine ambiguity" in the regulation. *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019).

---

[8] It is questionable whether the *Auer* deference remains good law after *Loper Bright*. This issue has not been directly addressed by the Second Circuit Court of Appeals.

When determining if an agency's decision is arbitrary and capricious, the court requires that the "agency action be reasonable and reasonably explained," and rest on "consideration of the relevant factors." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *City Club of New York v. United States Army Corps of Eng'rs.*, 246 F. Supp. 3d 860, 864 (S.D.N.Y. 2017) (citation omitted).

## LEGAL ARGUMENT

### I.    THE SBA EXCEEDED ITS STATUTORY AUTHORITY WHEN IT ISSUED THE CGR.

When Congress enacted the CARES Act and Economic Aid Act, it provided the SBA with authority to "make such rules and regulations as [it] deems necessary to carry out the authority vested in" it. 15 U.S.C. § 634(b)(6). This authority, however, did not grant SBA an unfettered swath of authority—instead, its authority is constrained by Congress's precise delegation of power. *Loper Bright*, 603 U.S. at 395. As discussed below, SBA's enactment of the CGR oversteps its congressionally delegated authority and, as a result, the regulation is contrary to law and cannot be enforced.

### A.    The SBA's Issuance Of The CGR Violates The Affiliation Waiver.

The SBA exceeded its statutory authority when it issued the CGR because it violates the Affiliation Waiver in the CARES Act and Economic Aid Act. To so find, this Court need do nothing more than "begi[n] … and en[d]" with "the plain language" of the statute. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (citation omitted).

Under the CARES Act and Economic Aid Act, the affiliation rules indisputably operate as limitations on PPP loan eligibility.  For example, if a business concern is affiliated with other entities by "common ownership," the business is required to aggregate its employees and the employees of its affiliates to determine if it has no more than 500 employees for First Draw PPP

Loans and no more than 300 employees for Second Draw PPP Loans. As a result of these affiliation rules, the business may not be "small" enough to be eligible for a PPP loan. *See* 13 C.F.R. § 121.301.

Congress, however, determined that NAICS 72 entities—such as hotels—applying for PPP loans should be exempt from the affiliation rules and, therefore, expressly enacted the Affiliation Waiver. Based on the Affiliation Waiver, even if hotels had "common ownership" with other entities, that affiliation would have no bearing on their PPP loan eligibility.

The SBA, however, wholly flouted Congress's Affiliation Waiver when it issued the CGR. *See*, *e.g.*, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018) ("the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer"). SBA expressly stated that businesses are subject to the CGR "even if [they] are eligible for the waiver-of-affiliation provision under the CARES Act." 85 Fed. Reg. 26324, 26325; *see* 86 Fed. Reg. 3692 at 3702 (same). Therefore, hotels that were affiliated by "common ownership" were no longer eligible for a Second Draw PPP loan once the $4 million aggregate limit in the CGR was reached.

Indeed, that is exactly what the SBA concluded in this case in its FLRD, and on review in the OHA. *See* SOF ¶¶ 13-14. In the OHA decision, it wrongly deferred to the SBA's definition of "common parent" provided in its Response to the Appeal Petition. OHA stated as follows:

> While the term "common parent" is not specifically defined in the pertinent IFRs, again I point out that I am bound by SBA's interpretation of that term as a policy statement.
>
> A "common parent" may be an individual, entity, or combination thereof, and there is no language in the IFR that defines that a "common parent" must be only one entity...the term "common parent" must be understood to include aggregated minority interests. (citation omitted).

SOF ¶ 20.  Thus, under the guise of the CGR, the SBA has wrongly imposed the affiliation rules on NAICS 72 entities, including Soho Hotel, directly contrary to the Affiliation Waiver enacted by Congress.  Hotels meeting the eligibility criteria laid out by Congress, are no longer eligible for PPP loans under the CGR due to their "common ownership" with other entities.

The SBA therefore exceeded its statutory authority when it issued the CGR in direct contravention of the Affiliation Waiver.

**B.    Applying The CGR To NAICS 72 Entities Is Contrary To The Text, Structure, And Purpose Of The CARES Act And Economic Aid Act.**

Even if the CGR does not <u>directly contradict</u> the Affiliation Waiver, SBA nonetheless exceeded the bounds of its statutory authority. Congress did not, as discussed above, authorize the SBA to deem hotels ineligible for PPP loans based on their affiliation with other hotels. Therefore, the SBA's authority to do so in the form of the CGR must come, if at all, from statutory silence. But, crucially, "silen[ce]" is not a license for an agency to wield power in whatever ways it deems "permissible." *Loper Bright*, 603 U.S. 369 at 400. Indeed, "an agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  SBA, however, with no power conferred by Congress, has imposed the CGR on NAICS 72 entities.

*First*, it is implausible that Congress silently authorized the SBA to add affiliation-based limitations, like the CGR, to hotels when Congress expressly specified that the affiliation-based rules would be limited to non-hotel entities applying for a PPP loan. *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("Drawing meaning from silence is particularly inappropriate … [when] Congress has shown that it knows how to [address an issue] in express terms.") (alterations in original) (citation omitted). Indeed, finding that such an authority was granted would render the Affiliation Waiver wholly superfluous and allow it to be stripped away at the whim of the agency.

*Second*, there is nothing in the text of the statute that could be read to "give the [SBA] broad power to pass new rules" pertaining to eligibility, such as the CGR. *Heating, Air Conditioning & Refrigeration Distribs. Int'l v. EPA*, 71 F.4th 59, 67 (D.C. Cir. 2023).

To the contrary, for First Draw PPP Loans Congress mandated that "*any*" individual "business concern … *shall* be eligible to receive" a PPP loan if it satisfies the conditions that the statute authorizes. 15 U.S.C. § 636(a)(36)(D)(i) (emphases added).  And for Second Draw PPP Loans Congress provided that "any business concern" that satisfies certain conditions is "eligible" for a Second Draw PPP Loan. 15 U.S.C. § 636(a)(37)(A)(iv)(I).  Use of the word "any" "impl[ies] *every* member of the class or group," and the word 'shall' or phrase "is eligible", by its clear terms, is mandatory.  *See, e.g., SAS Inst., Inc.*, 138 S. Ct. at 1354 (first alteration in original) (citations omitted). Congress meant what it said: any business that satisfies the statutory conditions is eligible to receive a PPP loan. In addition, Congress provided detailed provisions regarding what makes a business eligible or ineligible for a PPP loan (and forgiveness of that loan). Given these "exhaustive instructions" to the SBA regarding eligibility for PPP loans, it simply is not "plausible" that Congress gave SBA authority to change its express directive.

*Third*, Congress never adopted a loan limitation in the form of a cap on how much money a so-called "corporate group" might borrow in the statute. Instead, Congress enacted unique formulas to allow businesses to be provided with maximum loan relief under the PPP for its payroll and other eligible costs. For instance, as applicable here, for Second Draw PPP loans Congress made clear that NAICS 72 entities could receive either a payroll-based amount "or, $2,000,000" (whichever was smaller). 15 U.S.C. §636(a)(37)(C)(iv). No reading of the text of this provision (or other similar provisions) could thus be deemed to give SBA authority to revise the statute's formulas through the CGR, which dictates that corporate groups cannot receive more than $4

million in Second Draw PPP Loans in the aggregate. Indeed, this effectively precludes businesses from receiving the very funds Congress knew they needed and intended to provide to cover their payroll costs. The end (and untenable) result: PPP funds are unavailable to otherwise eligible entities that meet the criteria for relief.

*Fourth*, the broad purpose of the CARES Act was "to help businesses weather the pandemic," *Air Excursions LLC v. Yellen*, 66 F.4th 272, 275 (D.C. Cir. 2023), and the PPP sought "to provide support to as many displaced American workers as possible." *DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743, 746 (6th Cir. 2020). Congress took special care to achieve these goals for businesses in the hospitality industry, which experienced perhaps the most significant disruption and heaviest losses of any industry during the pandemic. Congress's intent to maximize loan relief for these businesses is clear from both the Affiliation Waiver and the higher multiplier (3.5x) for loan amounts that Congress designed for the hospitality industry. SBA's CGR is, thus, "incongruous" with the "statutory purposes and design" laid out by Congress. *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006).

Accordingly, applying the CGR to NAICS 72 entities is contrary to the text, structure, and purpose of the CARES Act and Economic Aid Act. As a result, the SBA exceeded its SBA's statutory authority when it issued the CGR.

### C.    SBA's Position That It Did Not Act In Excess Of Its Authority In Issuing The CGR Should Be Rejected.

SBA—in an effort to clothe itself with statutory authority—has labeled the CGR as merely a "limitation" on the "loan *amount*" that an "eligible" business can receive. In turn, because it is merely a limitation on the loan amount, it does not conflict with the Affiliation Waiver. 85 Fed. Reg. 26324, 26325 n.1 (emphasis added); *see* 86 Fed. Reg. 3692, 3702 n.59 (same). But SBA cannot adorn the CGR with this "label" to salvage its unlawfulness. *See*, *e.g.*, *Azar v. Allina Health*

*Servs.*, 587 U.S. 566, 575 (2019) ("courts have long looked to the *contents* of the agency's action, not the agency's self-serving *label*, when deciding whether statutory notice-and-comment demands apply") (alteration in original). Stated differently, SBA does not have "the power to do indirectly what it cannot do directly." *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 328 (1961). Labeling the CGR as merely a limitation on loan amounts—rather than as a limitation on loan eligibility—is nothing more than an attempt to "wor[k] an end run around" the Affiliation Waiver. *Ragsdale v. Wolverine World-Wide, Inc.*, 535 U.S. 81, 91 (2002).

Soho Hotel acknowledges that at least one district court addressing the CGR where borrower was a NAICS 72 entity has agreed with the SBA's position. But this Court is not bound by, and should not be persuaded to follow it. *3f355 State Street Hotel Partners, LLC v. Loeffler*, No. 24-747 (JDB), 2025 WL 870535 (D.C. Mar. 20, 2025). The *35 State Street* court concluded the CGR does not "directly conflict with the Affiliation Waiver" despite conceding that (1) the Affiliation Waiver "forbids SBA from using the affiliations of a business in the accommodations and food industry" to determine eligibility; <u>and</u> (2) the CGR was affiliation-based. *Id*. at *7. In reaching its flawed result, the court relied, first, on language in the CGR which provides that "businesses that are part of a single corporate group shall in no event <u>receive</u> more than…$4 million for second draw loans—in the aggregate." *Id.* Focusing on the word "receive," the district court stated as follows:

> Rather than limiting a business's "eligibility for a covered loan", the [CGR] limits the amount a business can "receive."

*Id*. (citations omitted). Next, the court found that while the definition of a single corporate group "overlaps" with the affiliation rules, the rules are used differently. To justify this statement, the court reverted, again, to the single word "receive" stating that "[r]ather than limiting a business's 'eligibility for a covered loan,' the [CGR]limits the amount a business can 'receive.'" *Id.*

14

That analysis rings hollow.  Restricting eligibility is based on loan amounts received—as opposed to size-based criteria under the affiliation rules—does not change the fact that application of either renders an otherwise eligible hotel ineligible for the loan under the PPP once the $4 million aggregate is met. But nothing in the CARES Act or Economic Aid Act suggests that a borrower's maximum loan amount eligibility is dependent on its relationship with other businesses. That is, however, exactly what the CGR impermissibly mandates.

Recognizing this conundrum, the *35 State Street* court found that Congress's mandate that businesses who meet the eligibility requirements are entitled to relief under the PPP program, is not really a mandate at all. The court relied on the following provision:

**(B) Paycheck Protection loans**

Except as otherwise provided in this paragraph, the Administrator <u>may guarantee covered loans</u> under the same terms, conditions, and processes as a loan made under this subsection.

*Id*. at *2, *9 (citing 15 U.S.C. 636(a)(36)(B)). According to the court, the use of the term, "may," was significant because it connotes discretion and, thus, does not <u>require</u> SBA to guarantee PPP loans meeting the statutory criteria. *Id*. at *9.  However, nothing in the language of this provision (*i.e.*, "may guarantee covered loans") grants the SBA broad-sweeping authority to rewrite the CARES Act and Economic Aid Act by imposing a so-called "corporate group rule" that drastically modifies the clearly stated eligibility requirements in the statute. The fact that phrase "**<u>may</u>** guarantee loans" appears in a single, introductory provision of the CARES Act does not give SBA unfettered discretion to modify eligibility requirements adopted by Congress. Had SBA been given such authority, Congress would not have used phrases making PPP loans mandatory once the eligibility requirements were met.  *See* 15 U.S.C. § 636(a)(36)(D)(i) (stating that "*any*" business concern "***shall be eligible*** to receive a covered loan" if it met the eligibility requirements); §

636(a)(37)(A)(iv)(I) ("any business concern" that satisfies certain conditions is "eligible" for a Second Draw PPP Loan).

Indeed, many courts have recognized that the SBA has no authority to create new restrictions on PPP eligibility that are not found in the statute. *See*, *e.g.*, *DV Diamond*, 960 F.3d at 745-47 (holding that plaintiffs were likely to succeed in their challenge to the SBA's "PPP Ineligibility Rule," which deemed sexually oriented businesses and certain other businesses ineligible to receive PPP loan guarantees"); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1055-57 (E.D. Wis. 2020) (same); *In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at *10 (Bankr. W.D. Tenn. June 2, 2020) (SBA exceeded its authority by excluding businesses from the PPP on the basis that their owners are 'presently involved in a bankruptcy.'"); *In re Roman Cath. Church of Archdiocese of Santa Fe*, 615 B.R. 644, 655 (Bankr. D.N.M. 2020) (the "[SBA] had no authority…to change the [PPP] eligibility requirements," by trying to prohibit bankruptcy debtors from getting PPP funds).

This Court should reach the same result.[9] Accepting SBA's proposed construction essentially eviscerates the CARES Act and Economic Aid Act by the use of the word "may." That, of course, makes no sense. The use of the word "may," simply cannot be found to give SBA permission to do anything it deems appropriate notwithstanding Congress's clear mandates. There is no law allowing courts to pluck certain words from statutory provisions—while ignoring the

---

[9] Two other district courts have engaged in similar reasoning when addressing the Corporate Group for borrowers who were not NAICS 72 entities. *See Forest View Rehab. & Nursing Ctr., LLC v. U.S. Small Bus. Admin.*, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024); *Accordius Health at Asheville, LLC v. U.S. Small Bus. Admin.*, 2025 WL 1503583 (W.D. N.C. Apr. 8, 2025). Those decisions are now on appeal in the federal circuit courts of appeal. *35 State Street* was not appealed because the district court remanded the matter to the SBA due to SBA's failure to explain why the hotel's violation of the rule made the hotel ineligible for forgiveness.

statue as whole—to grant the SBA authority far beyond what Congress intended. Accordingly, the district court's reasoning in *35 State Street* should be rejected.

## II.    THE SBA VIOLATED ITS RULEMAKING DUTIES IN ISSUING THE CGR.

"The APA requires—with some exceptions—that all 'rules' be issued through a statutorily prescribed notice-and-comment process." *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 619 (4th Cir. 2018) (citing 5 U.S.C. § 553(a)-(c)). When such rules are issued by agencies, they must comply with the notice and comment process to have the force and effect of law. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 1200-1201 (2015) (relying on *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-303 (1979). Notwithstanding this law, because of the exigencies of the COVID-19 pandemic, Congress gave the SBA emergency rulemaking authority exempting it from the normal notice and comment process. Specifically, 15 U.S.C. § 9012, titled "Emergency rulemaking authority" provides as follows:

> Not later than 15 days after March 27, 2020, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of Title 5.

Consistent with the Emergency rulemaking authority, the interim final rule implementing the CGR for First Draw PPP Loans states as follows:

> This interim final rule is effective without advance notice and public comment because section 1114 of the CARES Act authorizes SBA to issue regulations to implement Title 1 of the CARES Act without regard to notice requirements.

*See* 85 Fed. Reg. 26324. Because the interim final rule was issued on May 4, 2020, the 15-day period to issue rules without notice and comment lapsed on April 13, 2020.[10] Therefore, the interim final rule containing the CGR was not issued under the authority of section 1114 of the CARES Act.    Correspondingly, the Economic Aid Act provides as follows:

---

[10] Because the 15-day period ended on April 11, a Saturday, the deadline was Monday, April 13.

SEC. 303. EMERGENCY RULEMAKING AUTHORITY.

Not later than 10 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this Act and the amendments made by this Act without regard to the notice requirements under section 553(b) of title 5, United States Code.

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020).  There is no dispute that the CGR was issued beyond the time-frames authorized by Congress. However, SBA failed to establish why notice and comment should not have been given. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 801 n.6 (D.C. Cir. 1983) ("the onus is on the [agency] to establish that notice and comment" should not be given).  Absent a legally permissible explanation, the interim final rules were not "duly promulgated" and do not have the force and effect of law. *But see Accordius Health*, 2025 WL 1503583, at *8 (because the statute did not specify a consequence for non-compliance, the SBA's directive was only intended to spur action, not limit its scope of authority).

## III.     THE SBA ERRED IN APPLYING THE CGR TO SOHO HOTEL.

### A.     This Court Should Adhere To The Plain Meaning Of The CGR.

If this Court were to conclude that SBA did not exceed its statutory authority when it issued the CGR, the SBA's decision should nonetheless be vacated because the SBA erred in its application of the CGR to this case. *Auer* deference should not be afforded to the SBA because there is no genuine ambiguity in the CGR regulation. *See Kisor*, 588 U.S. at 574. A "genuine ambiguity" does not exist if, as here, there is only one reasonable construction of an agency regulation after the court has exhausted all traditional rules of construction. *See id.* In such a circumstance, a court "has no business deferring to any other reading, no matter how much the agency insists it would make sense." *Id.* at 575.

In this case, the plain language of the CGR states, in pertinent part:

> [B]usinesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

85 Fed. Reg. 26324, 26325. Under its plain language, for Soho Hotel to be part of a "single corporate group" it must be **majority owned** directly or indirectly by a "**common parent**." SBA, in issuing the regulation, did not provide a definition of "common parent" or "corporate group." Accordingly, we resort to the dictionary to discern the undefined terms' common-sense plain meaning. *See Smith v. U.S.*, 508 U.S. 223, 228-29 (1993); *SH Synergy, LLC v. United States*, 165 Fed. Cl. 745, 762 (2023) (where SBA failed to define a term in a regulation, resort to the dictionary was appropriate to ascertain its plain meaning).

As an initial matter, SBA chose to have the regulation apply to a "**single corporate group**." There can be no reasonable dispute that a "corporate group" is commonly understood to be a collection of companies that are controlled by a parent company, and often file one consolidated tax return. *See, e.g.*, *Consumer Fin. Protection Bur. v. NDG Fin. Corp.,* 2018 WL 1605067, at *1 (S.D.N.Y. Mar. 12, 2018) (referring to a "corporate group" as the parent and its subsidiaries); *American Silicon Tech. v. U.S.*, 334 F.3d 1033, 1036 (Fed. Cir. 2003) (same) *Wirth v. Sun Healthcare Grp., Inc.*, 389 P.3d 295, 304 (N.M. Ct. App. 2016) (same); Phillip I. Blumberg, *Limited Liability and Corporate Groups*, 11 Journal of Corporation Law 573, 605 (1986) (noting that "corporate group" involves the controlled corporation, i.e., the subsidiary, and the controlling shareholder, i.e., the parent); Internal Revenue Manual, 3.11.16.29, Consolidated Returns (noting that a consolidated return is defined as a single income tax return having combined financial data for a parent corporation and one or more subsidiary or affiliated corporations).

Moreover, the plain meaning of the term "common parent" must be viewed in the context of the entire regulation—including the fact that the "businesses" in the "corporate group" must be

19

majority owned by the "common parent." *See Kisor*, 588 U.S. at 559 (courts "must carefully consider[] the text, structure, history, and purpose of a regulation…").

Because the term "corporate group" is commonly understood to involve a parent-subsidiary relationship, the common sense meaning of the term "common parent" is the entity that controls the affiliated group of companies, *i.e.*, the subsidiaries. This interpretation is entirely consistent with other regulations that define the term "common parent" and the dictionary definition of similar terms, such as "parent company." *See, e.g.*, 48 C.F.R. § 4.901 (common parent is defined as the "corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member"); *Parent Corporation*, BLACK'S LAW DICTIONARY 418 (10th ed. 2014). ("parent corporation . . . [a]lso termed parent company" is "[a] corporation that has a controlling interest in another corporation (called a subsidiary corporation), usually through ownership of more than one half the voting stock—Often shortened to parent[.]"); *see also Common Parent*, LAW INSIDER, www.lawinsider.com/dictionary/common-parent (last visited July 28, 2025) (providing in multiple different contexts the term "common parent" means a "corporate entity that owns or controls an affiliated group of corporations that files Federal income tax returns on a consolidated basis").

Thus, the only reasonable interpretation is that a "single corporate group" is limited to a parent-subsidiary relationship. Here, there is no evidence that Soho Hotel is majority owned,[11] directly or indirectly, by a common parent and, therefore, it is *not* a part of a single corporate group

---

[11] Majority ownership clearly refers to ownership interests of greater than 50% in an entity. *See, e.g., Majority Ownership*, LAW INSIDER, https://www.lawinsider.com/dictionary/majority-ownership (last visited July 28, 2025) ("Majority ownership of an entity means ownership interests representing more than fifty percent (50%) of the total fair market value or of the total voting power of all ownership interests in the entity"); *Majority*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/majority (last visited July 28, 2025) (majority means a "number or percentage equaling more than half of a total").

subject to the $4 million limit for Second Draw PPP Loans. Indeed, the record is undisputed that Soho Hotel is a stand-alone limited liability company that has its own management and employees, both of which are entirely separate from the other limited liability companies in which Mr. Fuchs and Mr. Rosen have a beneficial ownership interest. None of these independent LLCs have control over the other LLCs and all file their own individual tax returns. Stated differently, there are no facts establishing that one of the entities has control over and is, therefore, a "common parent" to the other entities.

The result of any other interpretation would be that individual shareholders of corporations and members of limited liability companies would have to be considered in applying the definition of "common parent." This is illogical and clearly not the intention of Congress. Therefore, the SBA's conclusion to the contrary must be rejected.

**B.    SBA's Construction Of The CGR Is Wholly Unreasonable And Effectively Improperly Amends The Regulation.**

Even if this Court were to find a "genuine ambiguity," SBA's interpretation of the CGR should be afforded no deference because it is wholly unreasonable. *Kisor*, 588 U.S. at 576. But even if the Court finds otherwise, no deference should be afforded because the agency's interpretation (1) is not the "authoritative" or "official position" of the agency, but merely an ad hoc statement that does not reflect the agency's views; (2) does not implicate the agency's substantive expertise; and (3) does not reflect a fair and considered judgment, but instead is merely a "convenient litigating position or post hoc rationalization advanced to defend past agency action against an attack." *Id*. at 579.

Ignoring the plain meaning of the terms used in the CGR, SBA has created a purported "corporate group" by (1) identifying each limited liability company in which Mr. Rosen and Mr. Fuchs have a combined beneficial ownership in excess of 50%; and (2) impermissibly lumping all

the separate limited liability companies together, claiming that this constitutes a "single corporate group" even though no "common parent," as defined above, exists for these limited liability companies. *See* FLRD, ECF 14-2, pp. 29-30 (concluding that because Mr. Rosen and Mr. Fuchs are combined majority owners of at least six entities that received over $10 million in PPP Loans, they formed a "single corporate group" that was ineligible for the Second Draw PPP Loan).

SBA's wholly convenient definition of "common parent" is set forth in its papers filed with OHA:

> A "common parent" may be an individual, entity or combination thereof, and there is no language in the IFR that defines that a "common parent" must be only one entity.… the term "common parent" must be understood to include aggregated minority interests."

(SOF ¶ 20). SBA can proclaim that this interpretation is "reasonable," but ultimately its ad-hoc, expansive interpretation of the CGR is wholly unsupported.

Indeed, applying SBA's interpretation so drastically deviates from the common understanding of the terms "corporate group" and "common parent" that it (1) effectively amends the regulation without the required notice and comment required by the APA; and (2) applies it retroactively to borrowers who had relied on the plain language of the regulations when they submitted their applications and requests for loan forgiveness. Clearly, when Soho Hotel applied for its loan, no law, regulation or other guidance even remotely indicated that Mr. Fuchs and Mr. Rosen could be deemed a "common parent" based on their majority interest, together, in various stand-alone LLC's. Instead, the law provided that Soho Hotel met the PPP requirements for eligibility and was subject to the Affiliation Waiver. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Durable Mfg. Co. v. U.S. Dep't. of Labor*, 578 F.3d 497, 503 (7th Cir. 2009) (regulations have retroactive effect when they "would

impair rights a party possessed when [they] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed").

Moreover, SBA's unreasonable interpretation regarding the CGR flies in the face of its repeated assurances to borrowers that they could rely on the rules and regulations in effect on the day borrowers applied for assistance, which is exactly what Soho Hotel did when it applied for its Second Draw PPP Loan. *See, e.g.*, U.S. Small Business Administration, Paycheck Protection Program (PPP) Frequently Asked Questions (FAQs) at Q. 17 (Dec. 9, 2020), https://www.sba.gov/sites/default/files/2020-12/Final%20PPP%20FAQs%20%28December%209%202020%29-508.pdf (last visited July 25, 2025) ("Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application") (emphasis added); U.S. Small Business Administration, Paycheck Protection Program (PPP) Frequently Asked Questions (FAQs) at Q. 17 (July 29, 2021), https://www.sba.gov/sites/default/files/2021-07/FINAL%20FAQ%20Update%207.29.21-508.pdf (last visited July 25, 2025) (same).  SBA's interpretation has undoubtedly created unfair surprise to borrowers who properly relied on the plain language of the regulations and available guidance when they applied for, and obtained, PPP loans in the midst of an unfolding economic crise created by the COVID-19 pandemic. *See Kisor*, 588 U.S. at 579. SBA has no power to tailor legislation to bureaucratic policy goals by issuing new rules that attempt to rewrite existing law and undermine the expressed intent of Congress. But that is precisely what the SBA did when it issued the CGR.

SBA will undoubtedly rely on *Accordius Health* and *Forest View*, both of which have been appealed, in which the district courts adopted SBA's unreasonable interpretation of the CGR. Both courts concluded that when two entities or individuals form a "partnership" and create business

entities, the "partnership" is the common parent, and the entities owned by the partnership are thus part of a "single corporate group." *Accordius Health*, 2025 WL 1503583, at *9; *Forest View*, 2024 WL 5247837, at *12. In reaching this result, these district courts have run afoul of the United States Supreme Court directive that, when there is only one "reasonable construction," a court "has no business deferring to any other reading, no matter how much the agency insists it would make sense." *Kisor*, 588 U.S. at 576.

Moreover, those district courts seemed swayed by the fact that both cases involved large nursing home conglomerates described by one district court as a "shared empire." *See Forest View*, 2024 WL 5247837, at *12 (noting that the two companies deemed to be a partnership have an ownership interest in 203 enterprises in the Midwest and Southeast and that PPP loans were disbursed primarily to nursing home facilities); *Accordius Health*, 2025 WL 1503583, at *4 (noting that "[t]he Plaintiffs in these cases are 48 limited liability companies ("LLCs") operating in five states as skilled nursing facilities," each were owned fifty percent by two individuals, that are part of a larger group of 343 LLCs jointly owned by these same individuals, all of which are overseen by Portopiccolo Group, managed by these two individuals). There is no such "shared empire" here that obtained PPP loans for a large conglomerate of entities. For these reasons, this Court should not find that these decisions offer any persuasive guidance.

## IV.    THE CGR IS ARBITRARY AND CAPRICIOUS AND MUST BE SET ASIDE.

The CGR is also arbitrary and capricious and must be set aside because it was founded on factors that Congress did not intend for the SBA to consider. *See supra,* Legal Argument Section I; *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"). Congress, by its words, made clear the if the qualifications for loan eligibility and forgiveness were met—none of which contained exceptions

for "corporate groups"—the applicant would be entitled to relief under the PPP. Indeed, nowhere in the CARES Act or Economic Aid Act did Congress express an intent that business ownership was a consideration for limitations on PPP loans. *See* 15 U.S.C. § 636(a)(36), (a)(37). Nonetheless, SBA proceeded to limit eligibility on this exact basis through the CGR. In doing so, SBA has undermined Congress's express intent to keep workers employed by increasing businesses' eligibility requirements for PPP loans. *See* Pub. L. No. 116-136, title I, 134 Stat. 281, 286 (2020).

In addition, the SBA failed to provide a well-reasoned explanation for its authority to promulgate the CGR.[12] SBA notes that that CGR was meant "[t]o preserve the limited resources available to the PPP program" and "promote the availability of PPP loans to the largest possible number of borrowers[.]" 85 Fed. Reg. 26324, 26325. No statutory authority is provided other than the language in the PPP "that the Administrator 'may' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a 'maximum'—but not a minimum—loan amount." *Id.*, n. 1 (citing 15 U.S.C. § 636(a)(36)(B) and (E)). However, as addressed in *Legal Argument, Section I*, above, there is no language in the CARES Act or Economic Aid Act indicating that the maximum loan amount a borrower can qualify for varies based on their relationship with other businesses.

## CONCLUSION

Based on the forgoing, the Court should enter summary judgment for Soho Hotel and vacate the SBA's decision denying forgiveness of its Second Draw PPP Loan.

---

[12] Further, and as found in *35 State Street*, the SBA's decision was also arbitrary and capricious here because "SBA did not explain why [Soho Hotel's] receipt of a loan in excess of the [CGR] cap rendered [Soho Hotel] ineligible for loan forgiveness. Instead, it simply jumped from the conclusion that [Soho Hotel] violated the CGR to the conclusion to deny loan forgiveness. It cannot do so." 35 *State Street*, 2025 WL 870535, at *13.

DATED:  August 1, 2025                      Respectfully submitted,

                                            GREENBERG TRAURIG, LLP

                                            By: /s/ *Daniel Filor*
                                                    Daniel P. Filor
                                                    One Vanderbilt Avenue
                                                    New York, New York 10017
                                                    Telephone: (212) 801-9200
                                                    Email: filord@gtlaw.com

                                                    Kimberly S. Mello, *Pro Hac Vice*
                                                    GREENBERG TRAURIG, P.A.
                                                    450 S. Orange Ave., Ste. 650
                                                    Orlando, FL 32803
                                                    Telephone: 407.418.2402
                                                    Email: mellok@gtlaw.com

                                                    *Counsel for Plaintiff*

Via ECF *All Counsel of Record*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 8,267 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document. In addition, I certify that this document complies with Rule 2(e) of the Honorable Jed S. Rakoff's Individual Rules of Practice, in that this document does not exceed 25 double-spaced pages and uses Times New Roman 12-point typeface.

/s/ *Daniel P. Filor*
Daniel P. Filor