**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SOHO HOTEL OWNER LLC,

      Plaintiff,

        v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION *et al.*,

      Defendants.

No. 25 Civ. 2838 (JSR)

---

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

JACOB LILLYWHITE
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

I.     Relevant Statutes and Regulations ................................................................3

      A.    SBA's Section 7(a) Loan Program ..................................................3

      B.    The CARES Act and the PPP ..........................................................4

      C.    SBA's Emergency Rulemaking ......................................................6

            1.    Delegation from Congress ..................................................6

            2.    Loan Origination and Forgiveness .....................................7

            3.    The Corporate Group Rule .................................................7

      D.    The Economic Aid Act ....................................................................8

II.    Soho, Its Corporate Group, and Their Second-Draw Loans .........................9

III.   Procedural History .......................................................................................11

LEGAL STANDARD ...............................................................................................12

ARGUMENT ...........................................................................................................13

I.     SBA's Corporate Group Rule Was a Reasonable Exercise of Delegated
     Authority ......................................................................................................13

      A.    By Necessity, Congress Delegated SBA Authority to "Fill Up the Details"
           of the PPP ......................................................................................13

      B.    The Corporate Group Rule Was a Reasonable Exercise of SBA's
           Authority ......................................................................................14

      C.    Congress Ratified the Corporate Group Rule with the Economic Aid Act....15

      D.    The Corporate Group Rule Applies Alongside Congress's Waiver of the
           Affiliation Rules, It Does Not "Render [It] Wholly Superfluous"..................16

      E.    Soho's Argument that Congress Meant to Forbid Any "Affiliation-Based
           Limitations" Is Without Support ......................................................17

F.    Soho's Argument that SBA Lacked Authority to Impose Additional PPP Eligibility Restrictions Is Wrong and Has Been Rejected by the Second Circuit ...................................................................................................18

G.    SBA's Slight Tardiness Did Not Invalidate its Exercise of its Emergency Rulemaking Authority ...............................................................................19

II.   The Court Should Uphold SBA's Interpretation of its Corporate Group Rule ........20

A.    Under the Plain Meaning of the Regulation, A Partnership-in-Fact Can Constitute a "Common Parent" of the Businesses it Owns ...................20

B.    If Ambiguous, the Corporate Group Rule Should Be Interpreted in Accordance with SBA's Intent to Broadly Allocate PPP Funds.....................22

C.    In the Event of Genuine Ambiguity, SBA's Interpretation of the Corporate Group Rule Is Entitled to Deference .................................................22

CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*35 State St. Hotel Partners, LLC v. Loeffler*,
   No. CV 24-747 (JDB), 2025 WL 870535 (D.D.C. Mar. 20, 2025) ..................................... 1, 15

*Accordius Health at Asheville, LLC v. SBA*,
   No. 1:23-CV-00129-MR, 2025 WL 1503583 (W.D.N.C. Apr. 8, 2025) ........................ *passim*

*Aetna Life Ins. Co. v. Big Y Foods, Inc.*,
   52 F.4th 66 (2d Cir. 2022) ..................................................................................................... 16

*Barnhart v. Peabody Coal Co.*,
   537 U.S. 149 (2003) .............................................................................................................. 19

*Biden v. Texas*,
   597 U.S. 785 (2022) .............................................................................................................. 14

*Brock v. Pierce Cnty.*,
   476 U.S. 253 (1986) .............................................................................................................. 19

*Brodsky v. Stadlen*,
   138 A.D.2d 662 (2d Dep't 1988) ......................................................................................... 21

*Celebrity of Springfield, LLC v. SBA*,
   No. 2:23-CV-01720-WJM-CLW, 2025 WL 1276104 (D.N.J. May 2, 2025) .................... 1, 15

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .............................................................................................................. 12

*Czernicki v. Lawniczak*,
   74 A.D.3d 1121 (2d Dep't 2010) ......................................................................................... 21

*Friends of Animals v. Romero*,
   948 F.3d 579 (2d Cir. 2020) ................................................................................................. 12

*Friends of Ompompanoosuc v. FERC*,
   968 F.2d 1549 (2d Cir. 1992) ............................................................................................... 12

*Forest View Rehab. & Nursing Ctr., LLC v. SBA*,
   No. 24 CV 1490, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024) ........................................ *passim*

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 22-1107, 2023 WL 5439455 (2d Cir. Aug. 24, 2023) ...................................................... 21

*In re Gateway Radiology Consultants, P.A.*,
    983 F.3d 1239 (11th Cir. 2020) ........................................................................ 4, 14

*Karpova v. Snow*,
    497 F.3d 262 (2d Cir. 2007) ................................................................................ 13

*Kisor v. Wilkie*,
    588 U.S. 558 (2019) ....................................................................................... 22, 23

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ...................................................................................... 13, 18

*Lorillard v. Pons*,
    434 U.S. 575 (1978) ............................................................................................ 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .............................................................................................. 13

*Nat'l Audubon Soc. v. Hoffman*,
    132 F.3d 7 (2d Cir. 1997) .................................................................................... 12

*Pharaohs GC, Inc. v. SBA*,
    990 F.3d 217 (2d Cir. 2021) ......................................................................... *passim*

*Rappaport v. Guardian Life Ins. Co. of Am.*,
    No. 1:22-CV-08100 (JLR), 2024 WL 4872736 (S.D.N.Y. Nov. 22, 2024) ............ 23

*Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*,
    31 F. Supp. 3d 571 (S.D.N.Y. 2014) .................................................................... 12

*Sage v. Picard*,
    144 S. Ct. 2607 (2024) ........................................................................................ 21

*SBA v. McClellan*,
    364 U.S. 446 (1960) ............................................................................................ 13

*Springfield Hosp., Inc. v. Guzman*,
    28 F.4th 403 (2d Cir. 2022) ...................................................................... 13, 18, 19

*UPMC Mercy v. Sebelius*,
    793 F. Supp. 2d 62 (D.D.C. 2011) ....................................................................... 12

## Statutes and Regulations

5 U.S.C. § 706(2)(A) ................................................................................................ 12

15 U.S.C. § 632(a)(1) ................................................................................................. 4

15 U.S.C. § 634(b)(6) ............................................................................................ 3, 13

15 U.S.C. § 636(a) .................................................................................................... 3

15 U.S.C. § 636(a)(36) .............................................................................................. 4

15 U.S.C. § 636(a)(36)(B) ............................................................................. 4, 5, 8, 14

15 U.S.C. § 636(a)(36)(E) ................................................................................. 5, 8, 9

15 U.S.C. § 636(a)(37)(B) ................................................................................ 2, 8, 16

15 U.S.C. § 636m(b) .................................................................................................. 5

15 U.S.C. § 636m(g) .................................................................................................. 5

15 U.S.C. § 9012 ........................................................................................................ 6

13 C.F.R. §§ 120.100(d) ............................................................................................ 4

13 C.F.R. §§ 121.103 ................................................................................................. 4

Business Loan Program Temporary Changes; Paycheck Protection Program,
   85 Fed. Reg. 20,811 (Apr. 15, 2020) ............................................................. 4, 6, 7

Business Loan Program Temporary Changes; Paycheck Protection Program—
   Requirements—Corporate Groups and Non-Bank and Non-Insured Depository
   Institution Lenders,
   85 Fed. Reg. 26,324 (May 4, 2020) .................................................................. *passim*

Business Loan Program Temporary Changes; Paycheck Protection Program Second
   Draw Loans,
   86 Fed. Reg. 3712 (Jan. 14. 2021) .................................................................... *passim*

Business Loan Program Temporary Changes; Paycheck Protection Program—Loan
   Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act,
   86 Fed. Reg. 8,283 (Feb. 5, 2021) .......................................................................... 7

## **Rules of Procedure**

Fed. R. Civ. P. 56(a) ................................................................................................ 12

Defendants the United States Small Business Administration and Kelly Loeffler, in her official capacity as Administrator of the SBA (collectively, "SBA"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiff Soho Hotel Owner LLC's ("Soho") motion for summary judgment (ECF No. 15), and in support of SBA's cross-motion for summary judgment on all of Soho's claims.  The Court should deny Soho's motion and grant SBA's cross-motion.[1]

## PRELIMINARY STATEMENT

In violation of governing SBA regulations, Soho sought and received a $2 million second-draw PPP loan to which it was not entitled, after its corporate group had already received $6 million in such loans notwithstanding SBA's $4 million cap.  Soho now seeks to invalidate SBA's regulations to avoid having to repay that loan.  Soho's arguments are without merit and have been rejected by each of the four courts to consider this issue.  *See Celebrity of Springfield, LLC v. SBA*, No. 2:23-CV-01720-WJM-CLW, 2025 WL 1276104 (D.N.J. May 2, 2025); *Accordius Health at Asheville, LLC v. SBA*, No. 1:23-CV-00129-MR, 2025 WL 1503583 (W.D.N.C. Apr. 8, 2025); *35 State St. Hotel Partners, LLC v. Loeffler*, No. CV 24-747 (JDB), 2025 WL 870535 (D.D.C. Mar. 20, 2025); *Forest View Rehab. & Nursing Ctr., LLC v. SBA*, No. 24 CV 1490, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024).

In March 2020, Congress rapidly passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which included the Paycheck Protection Program ("PPP"), just as the pandemic was shuttering American businesses.  Given the urgency, Congress directed the

---

[1] SBA does not submit a Rule 56.1 Statement of Material Facts, or a response to Soho's Rule 56.1 Statement, because Local Civil Rule 56.1 does not require such a statement in actions, like this one, brought under the Administrative Procedure Act.  If the Court would find it helpful for SBA to submit a Rule 56.1 Statement or a response to Soho's Rule 56.1 Statement, SBA would be happy to do so at the Court's instruction.

SBA to fill in the details of the PPP through emergency rulemaking.  SBA did so.  The funds Congress allocated to the PPP were too limited to award loans to all interested businesses; accordingly, to ensure PPP funds were distributed as widely and fairly as possible, SBA capped the maximum award to a single corporate group (the "Corporate Group Rule").  The Corporate Group Rule was a reasonable policy adopted pursuant to an express delegation from Congress, in an effort to achieve Congress's aims.

In December 2020, Congress authorized second-draw PPP loans through the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act"). Congress authorized SBA to "guarantee [second-draw] covered loans to eligible entities under the same terms, conditions, and processes as a [first-draw PPP] loan," "[e]xcept as otherwise provided" in the Economic Aid Act.  15 U.S.C. § 636(a)(37)(B).  While Congress revised certain features of the PPP in the Economic Aid Act, it left the Corporate Group Rule undisturbed.  Congress once again directed SBA to set out further details through emergency rulemaking; SBA expressly applied the Corporate Group Rule to second-draw PPP loans, for the same reasons it had done so for first-draw loans.

Soho principally argues that the Corporate Group Rule is unlawful because it conflicts with the CARES Act and Economic Aid Act's waiver of SBA's standard affiliation rules.  Yet, as SBA explained in its regulations, the Corporate Group Rule is fully consistent with this waiver, and both apply in tandem.

Soho also argues that the SBA Office of Hearing and Appeals's administrative law judge ("ALJ") erred in applying the Corporate Group Rule to the partnership-in-fact of Soho's two principals, who each own 50% of Soho as they do many other businesses.  Soho does not dispute that these principals have formed a partnership-in-fact.  Instead, Soho argues that their

partnership-in-fact, and the corporate entities it owns, should not constitute a "corporate group." SBA's regulations broadly state that "businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent."  85 Fed. Reg. 26,324, 26,325; *see* 86 Fed. Reg. 3712, 3720.  Soho argues that a partnership-in-fact cannot constitute a "common parent," gesturing only at a "common[] "underst[anding]" that a "corporate group" should include a "parent corporation."  (Mem. of Law in Support of Pl.'s Mot. for Summary Judgment, Dkt. No. 16 ("Pl. Br.") 19, 20.)  The two district courts to consider the question have correctly held that a partnership-in-fact constitutes a "corporate group" for purposes of the Corporate Group Rule.  *See Accordius Health*, 2025 WL 1503583, at *9; *Forest View*, 2024 WL 5247837, at *12.

For these reasons, and the reasons that follow, this Court should deny Soho's motion for summary judgment and grant SBA's cross-motion for summary judgment.

## BACKGROUND

### I.    Relevant Statutes and Regulations

#### A.    SBA's Section 7(a) Loan Program

SBA guarantees loans to small businesses pursuant to Section 7(a) of the Small Business Act ("Section 7(a)").  15 U.S.C. § 636(a).  In Section 7(a), Congress broadly delegated to SBA the authority to "make such rules and regulations" as the agency "deems necessary" to implement the loan program, and to "take any and all actions" the agency "determines . . . are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans[.]"  15 U.S.C. § 634(b)(6), (b)(7).

As its name suggests, the Small Business Administration generally only guarantees Section 7(a) loans to businesses that qualify as "small" according to various criteria set out in the

Small Business Act and SBA regulations, including employee counts and revenue limits.  *See* 15 U.S.C. § 632(a)(1), (2)(A); 13 C.F.R. §§ 120.100(d), 121.201.  To help ensure SBA loans go only to "small" businesses, SBA regulations generally applicable to Section 7(a) include affiliation rules that aggregate employee counts and revenue across an applicant and its affiliates when determining loan eligibility (the "Affiliation Rules").  *See* 13 C.F.R. §§ 121.103; 121.301(f).  A business that, when considered together with its affiliates, has too many employees or too much revenue to qualify as "small" is generally ineligible to receive a Small Business Administration loan.  *See* 13 C.F.R. §§ 121.103; 121.301(f).

### B.    The CARES Act and the PPP

 In March 2020, as businesses were beginning to close in response to the pandemic, Congress quickly passed the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), to provide emergency assistance to those businesses, their employees, and others.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,811–12 (Apr. 15, 2020).  Congress provided some of that assistance through the Paycheck Protection Program, CARES Act § 1102, which Congress placed within SBA's Section 7(a) authority. 15 U.S.C. § 636(a)(36).

The CARES Act provides that, "[e]xcept as otherwise provided in [section 636(a)(36)], the [SBA] may guarantee [PPP] loans" issued by private lenders "under the same terms, conditions, and processes as [other] loan[s] made under" Section 7(a).  15 U.S.C. § 636(a)(36)(B) (emphasis added); *see id.* § 636(a)(36)(F)(ii).  As the Second Circuit has explained, "'[t]he PPP was not created as a standalone program; instead it was added into § 7(a), which subjects it to existing conditions and regulations, as well as existing SBA authority.'" *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 226–27 (2d Cir. 2021) (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020)).

4

The CARES Act then detailed certain ways in which first-draw PPP loans were to differ from other Section 7(a) loans. *Id*. § 636(a)(36)(D)–(W). Among other things, Congress relaxed Section 7(a)'s size limitations to allow businesses with as many as 500 employees (or more, in certain industries) to receive assistance, *id.* § 636(a)(36)(D)(i)(I), and it expanded access to PPP loans by waiving SBA's Affiliation Rules for certain industries, including hotels.[2] *Id.* § 636(a)(36)(D)(iv).

In addition, Congress enlarged the $5 million cap applicable to other Section 7(a) loans, providing that the "maximum amount" of a PPP loan was to be "the lesser of" $10 million and an amount calculated based on the applicant's payroll. 15 U.S.C. § 636(a)(36)(E).

Congress also directed that non-Section 7(a) lenders be allowed to participate in the PPP and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. *Id.* § 636(a)(36)(F)(ii)(I), (iii).

Finally, as relevant here, Congress provided for forgiveness of PPP loans. The CARES Act makes "[a]n eligible recipient" of a PPP loan "eligible for forgiveness" of that loan "in an amount equal to" the sum of its covered payroll costs and other allowable expenses, 15 U.S.C. § 636m(b), but not to exceed the principal amount of the loan, *id.* § 636m(d)(1). To obtain forgiveness, an eligible borrower submits an application and supporting documentation to its lender, which then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. 15 U.S.C. § 636m(g).

---

[2] Subparagraph 636(a)(36)(D)(iv) waives the Affiliation Rules for business concerns with 500 or fewer employees with a North American Industry Classification System code beginning in 72, which includes hotels and restaurants. *See* Office of Management and Budget, North American Industry Classification System at 557 (2017), *available at* www.census.gov/naics/ reference_files_tools/2017_NAICS_Manual.pdf (last visited August 22, 2025).

Congress initially authorized SBA to guarantee up to $349 billion in PPP loans by June 30, 2020.  CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)–(iii), (B).  SBA launched the PPP on April 3, 2020.  SBA Press Release No. 20-30.[3]  The demand for PPP loans was so great that the $349 billion authorized by Congress was exhausted in less than two weeks' time, by April 16, 2020.  *Compare* CARES Act § 1102(b) *with* SBA Press Release No. 2032.[4]  Congress authorized another $310 billion in PPP loans on April 24, 2020.  *See* Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).  After an extension, the PPP expired on August 8, 2020.  *See* Act of July 4, 2020, Pub. L. No. 116-147, 134 Stat. 660.

### C.    SBA's Emergency Rulemaking

#### 1.    Delegation from Congress

Given the national emergency and the importance of quickly distributing PPP funds to impacted businesses, Congress delegated to SBA "emergency rulemaking authority" to "issue regulations to carry out" the CARES Act "without regarding to the notice requirements" set out in the Administrative Procedure Act ("APA").  15 U.S.C. § 9012.  Congress directed the SBA to do so within 15 days of its enactment on March 27, 2020.  It took a few days longer, but SBA issued such regulations on April 15, 2020, and May 4, 2020.  85 Fed. Reg. 20,811; Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders, 85 Fed. Reg. 26,324 (May 4, 2020).

---

[3] *Available at* www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches (last visited August 22, 2025).

[4] *Available at* www.sba.gov/article/2020/apr/16/statement-secretary-mnuchin-administrator-carranza-paycheck-protection-program-economic-injury (last visited August 22, 2025).

### 2.    Loan Origination and Forgiveness

Pursuant to Congress's intent, SBA established a highly streamlined PPP loan-origination process based on borrower self-certifications of eligibility.  *See* 85 Fed. Reg. at 20,812, 20,814–16.  Because of the potential for error in this origination process, in which a large number of first-time SBA borrowers made self-certifications of eligibility and lenders possibly unfamiliar with SBA made determinations about eligibility for loan forgiveness, SBA implemented a system of PPP loan review at the back end.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program—Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8,283, 8,285 (Feb. 5, 2021).  If, during a review, SBA determines that "an action by the borrower has resulted in its receipt of a PPP loan that did not meet program requirements," SBA denies forgiveness of the loan.  *Id.*

### 3.    The Corporate Group Rule

On May 4, 2020, SBA promulgated the Corporate Group Rule.  85 Fed. Reg. 26,324.  Under the rule, "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate."  *Id.* at 26,325.  The Corporate Group Rule defined a "corporate group" as follows: "businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent."  *Id.*  The rule warned borrowers that loans received in violation of its terms "will not be eligible for forgiveness."  *Id.*

SBA explained the Corporate Group Rule's purpose was to "preserve the limited resources available to the PPP . . . in light of the previous lapse of PPP appropriations and the high demand for PPP loans[.]"  *Id.*  SBA "determined that limiting the amount of PPP loans that a single corporate group may receive [would] promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act."  *Id.*  SBA explained that it had authority to issue an "aggregate limitation" on the amount of PPP loans issued to a single

7

corporate group, because the terms of the CARES Act "specify a 'maximum'—but not a minimum—loan amount" for each borrower that SBA "may" guarantee. *Id.* at n.1 (citing 15 U.S.C. § 636(a)(36)(B), (E)).

SBA noted that the Corporate Group Rule "appl[ied] independent" of Congress's waiver of the Affiliation Rules. *Id.* at 26,325 (emphasis added). Applicants were subject to the Corporate Group Rule "even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules." *Id.* For businesses, like hotels, for which Congress waived the Affiliation Rules, that waiver made those businesses and other members of their corporate group potentially eligible for PPP loans up to the Corporate Group Rule's cap of $20 million.

### D. The Economic Aid Act

In December 2020, Congress reauthorized the Paycheck Protection Program with the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act. *See* Consolidated Appropriations Act, 2021, Div. N, Title III, Pub. L. No. 116-260, 134 Stat. 1182, 1993–2052 (Dec. 27, 2020). The Economic Aid Act extended the Paycheck Protection Program through March 2021 and added another $147.5 billion in loan authority. EAA § 323(a)(1). Congress also empowered SBA to guarantee so-called "second-draw" PPP loans to certain businesses that had already received "first-draw" PPP loans under the CARES Act. 15 U.S.C. § 636(a)(37)(B). Congress provided that SBA "may guarantee [second-draw] covered loans to eligible entities under the same terms, conditions, and processes as a [first-draw PPP] loan," "[e]xcept as otherwise provided" in the Economic Aid Act. *Id.*

The EAA established a "[m]aximum loan amount" for second-draw loans based on the CARES Act's payroll-based formula for first-draw loans, but with a smaller single-loan cap of $2 million. *Id.* § 636(a)(37)(C). Congress again waived SBA's Affiliation Rules for certain

industries, including hotels, for purposes of second-draw PPP loans, though it lowered the number of employees eligible hotels could have from 500 employees to 300. *Id.* § 636(a)(37)(E).

Again, Congress granted SBA "emergency rulemaking authority" and directed SBA to issue regulations implementing the EAA "[n]ot later than 10 days after" the EAA's enactment, on December 27, 2020, without regard to the notice-and-comment requirements of the APA. EAA § 303. Again, SBA's rulemaking took slightly longer, but it issued regulations for second-draw PPP loans under this emergency rulemaking authority beginning on January 14, 2021. Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712 (Jan. 14. 2021).

SBA generally applied its regulations for first-draw PPP loans to second-draw loans. *Id.* at 3713. That included the Corporate Group Rule. *Id.* at 3716, 3720. For second-draw loans, SBA set the cap for a single corporate group at $4 million in second-draw loans—twice the maximum Congress set for each individual second-draw loan, just as SBA had done with first-draw loans. *Id.* at 3716, 3720. SBA explained that it was again applying the Corporate Group Rule in order to "promote the availability of PPP loans to the largest possible number of borrowers[.]" *Id.* at 3716.

SBA also made clear that PPP applicants were responsible for notifying lenders "if the applicant has applied for or received PPP loans in excess of the amount permitted" by the rule and for withdrawing or requesting cancellation "of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule." *Id.* at 3702. Failure to do so would "be regarded as a use of PPP funds for unauthorized purposes." *Id.*

9

## II.    Soho, Its Corporate Group, and Their Second-Draw Loans

Soho Hotel Owner LLC is wholly owned, through three intermediate limited liability

companies, by Aby Rosen ("Rosen") and Michael Fuchs ("Fuchs"), each of whom holds a 50%

ownership interest.  (Supp. AR[5] 823, 831, 838; Pl. Rule 56.1 Stmt., Dkt. No. 17 ("Pl. 56.1") ¶ 2).

Including Soho, Rosen and Fuchs wholly own (through respective 50% interests) five corporate

entities—three of which operate hotels—that applied for, and received, second-draw PPP loans,

and they hold a majority share (through respective 30% interests) in a seventh corporate entity,

which also operates a hotel, that applied for, and received, a second-draw loan.  (Supp. AR 823–

24, 827–28, 831–32; Pl. 56.1 ¶¶ 15–17.)

Perhaps because Rosen and Fuchs publicly hold themselves out as having been "partners"

for decades on the website for one of their companies, RFR Holding LLC, which "is known for

owning and managing some of Manhattan's most prestigious signature office properties,"[6] Soho

does not dispute in its brief that Rosen and Fuchs have a partnership-in-fact (Pl. Br. 18-24).

Rosen and Fuchs's corporate entities collectively applied for, and received, six second-

draw PPP loans totaling $10,680,496.  (Supp. AR 831; Pl. 56.1 ¶ 15.)  At issue here is Soho's

second-draw PPP loan.  Soho applied through Manufacturers & Traders Trust Company for a

second-draw PPP loan on March 16, 2021.  (AR 3948-3953.)  On its Second Draw PPP Loan

Application (SBA Form 2483), Soho answered "No" when asked: "Is the Applicant or any

---

[5] To allow the Court to more easily reference citations in the ALJ's decision, SBA submitted the administrative record in three parts.  The first two parts, titled "Administrative Record" (Bates prefix "AR") and "Supplemental Administrative Record" (Bates prefix "Supp. AR"), constitute the two-part administrative record submitted to the ALJ and cited in his decision.  The third part consists of the ALJ's decision itself (Bates prefix "OHA").  These three parts of the administrative record are cited herein by their Bates prefixes.

[6] *See* rfr.com/about-rfr/rfr-profile (last visited August 22, 2025); rfr.com/about-rfr/history (last visited August 22, 2025).

owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business?" (AR 3948.) In addition, Rosen, on behalf of Soho, "certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," acknowledging that "making a false statement to obtain a guaranteed loan from SBA is punishable under the law," including various federal criminal laws. (AR 3950.)

Prior to the date Soho applied for a second-draw PPP loan, three other corporate entities owned by Rosen and Fuchs (two wholly owned, one majority owned) had each applied for and received $2 million in second-draw PPP loans, for a total of $6 million. (Supp. AR 823–24, 831, 838–41; Pl. 56.1 ¶¶ 15–16.)

A $2 million second-draw PPP loan was disbursed to Soho on April 12, 2021. (AR 3978.) On June 21, 2022, Soho applied for forgiveness of the full amount of that loan. (AR at 3954-3977.)

## III.    Procedural History

SBA denied Soho's application for forgiveness of its second-draw loan. It issued the operative determination on September 19, 2024.[7] After reviewing tax returns, organizational charts, borrower-submitted explanations of relationships among various corporate entities, and other documents, SBA determined that Rosen and Fuchs had a partnership-in-fact, which was a common parent of Soho as well as five other second-draw borrowers; that Rosen and Fuchs's borrowers had already received $6 million in second-draw PPP loans at the time Soho applied for a second-draw loan, which was $2 million above the Corporate Group Rule's $4 million cap; and thus, under the Corporate Group Rule, Soho was not eligible for a second-draw loan in any

---

[7] SBA withdrew its initial determination of December 13, 2023, following an appeal by Soho. (OHA 1 n.1.)

amount.  (AR 24-26.)  Because Soho was not eligible for the second-draw loan at the time it

applied, it was not entitled to loan forgiveness.  (*Id.*)

 Soho appealed SBA's determination on October 21, 2024.  (OHA 1.)  On January 3,

2025, an ALJ in SBA's Office of Hearings and Appeals affirmed SBA's determination on the

grounds given by the agency.  (OHA 18-27.)  Soho filed the instant suit on April 4, 2025.

## LEGAL STANDARD

 A "court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "Where, as here, a party seeks judicial review of agency action, summary

judgment is appropriate, since 'whether an agency action is supported by the administrative

record and consistent with the APA standard of review' is decided 'as a matter of law.'"

*Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586

(S.D.N.Y. 2014) (quoting *UPMC Mercy v. Sebelius*, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)).

"Generally, a court reviewing an agency decision is confined to the administrative record

compiled by that agency when it made the decision."  *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d

7, 14 (2d Cir. 1997).

 "Under the APA, courts review agency action to determine if it is 'arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law.'"  *Friends of Animals v.

Romero*, 948 F.3d 579, 585 (2d Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)).  This "narrow"

standard does not allow a court "to substitute its judgment for that of the agency."  *Friends of

Ompompanoosuc v. FERC*, 968 F.2d 1549, 1554 (2d Cir. 1992) (quoting *Citizens to Pres.

Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  Rather, a court may overturn an

agency's action only if it finds that the agency has relied on factors which Congress "has not

intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

When Congress "confer[s] discretionary authority on agencies," courts "need only fulfill their obligations under the APA to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 404 (2024).

## ARGUMENT

## I.    SBA's Corporate Group Rule Was a Reasonable Exercise of Delegated Authority

### A.    By Necessity, Congress Delegated SBA Authority to "Fill Up the Details" of the PPP

As the Supreme Court recently confirmed, Congress may delegate authority to an agency to "fill up the details" of a statutory scheme. *Loper Bright*, 603 U.S. at 395. That is just what Congress did here.

"Given the need to move expeditiously to address the pandemic's economic effects," *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 409–11 (2d Cir. 2022), and in light of SBA's expertise in implementing loan programs, Congress situated the PPP within SBA's Section 7(a) program and directed SBA to utilize emergency rulemaking to work out the details. Congress relied on its existing grant to SBA of "extraordinarily broad powers" to implement the agency's loan programs, *SBA v. McClellan*, 364 U.S. 446, 447 (1960), including the power to "make such rules and regulations as [SBA] deems necessary to carry out the authority vested in" it, and "take

any and all actions . . . when [it] determines such actions are necessary or desirable in making . . . or otherwise dealing with or realizing on loans," 15 U.S.C. § 634(b)(6), (7).  *See Pharaohs*, 990 F.3d at 227 (holding that, when Congress chose to "enact[] the [PPP] on the foundation of the SBA's 7(a) loan program," it intended existing SBA regulations to apply except otherwise specified, as courts "presume that Congress legislates against the backdrop of existing law"). When Soho argues that SBA's authority to promulgate the Corporate Group Rule "must come, if at all, from statutory silence" (Pl. Br. 11), and that Congress did not intend for SBA to supplement Congress's "exhaustive instructions" about the Paycheck Protection Program (Pl. Br. 12), nothing could be further from the truth.

Moreover, in keeping with the rest of Section 7(a), Congress vested discretion in SBA to determine which eligible applicants should receive PPP loans and—subject to certain Congressional maximums—the amount of those loans.  Congress provided in both the CARES Act and the Economic Aid Act that SBA "*may* guarantee covered loans" under the PPP, 15 U.S.C. § 636(a)(36)(B), (37)(B) (emphasis added), and the "[Supreme] Court has repeatedly observed that the word 'may' *clearly* connotes discretion," *Biden v. Texas*, 597 U.S. 785, 802 (2022) (emphasis in original) (internal quotation marks omitted).  *See also In re Gateway Radiology*, 983 F.3d at 1257 (upholding SBA PPP regulation and noting that "[t]he use of the permissive word 'may' vests the SBA with discretionary authority"); *Accordius*, 2025 WL 1503583, at *6 (upholding the Corporate Group Rule and noting "the CARES Act grants the SBA discretion, but does not require it, to guarantee PPP loans meeting the Act's criteria"); *Forest View*, 2024 WL 5247837, at *8 (upholding Corporate Group Rule and noting "[t]he term 'may' is permissive, not mandatory").

### B.    The Corporate Group Rule Was a Reasonable Exercise of SBA's Authority

At Congress's direction, SBA quickly utilized its emergency rulemaking authority to

create more detailed regulations to implement the PPP, and those regulations included the

Corporate Group Rule. As SBA explained in that rulemaking, it had to take steps to "preserve

the limited resources available to the PPP" given the prior "lapse of PPP appropriations" in the

face of "high demand for PPP" loans. 85 Fed. Reg. at 26,324–25. In particular, Congress's

initial appropriation of $349 billion—meant to last for the PPP's three-month term—had been

exhausted in less than two weeks. *Compare* CARES Act § 1102(b) *with* SBA Press Release No.

2032.[8] In order to "promote the availability of PPP loans to the largest possible number of

borrowers, consistent with the CARES Act," SBA implemented the Corporate Group Rule,

capping first-draw PPP loans to any single corporate group at $20 million, twice the statutory

maximum for a single loan. 85 Fed. Reg. at 26,324–25. SBA's "limitation on loans to

businesses that belong to large corporate groups—in an effort to maximize the overall number of

businesses that could receive loan assistance from the agency's finite resources—[wa]s a rational

policy choice consistent with the goals of the PPP and the CARES Act in general." *Accordius

Health*, 2025 WL 1503583, at *7. For the same reason, SBA applied the Corporate Group Rule

to second-draw PPP loans, capping second-draw loans to a single corporate group at $4

million—again, twice the single-loan maximum. 86 Fed. Reg. at 3716, 3720.

All four district courts to consider the question have upheld the Corporate Group Rule as

a lawful and reasonable exercise of the authority Congress delegated to SBA. *See Celebrity of

Springfield*, 2025 WL 1276104; *Accordius*, 2025 WL 1503583; *35 State St.*, 2025 WL 870535;

*Forest View*, 2024 WL 5247837. In so holding, these courts rejected arguments nearly identical

to those Soho has raised here.

---

[8] *Available at* www.sba.gov/article/2020/apr/16/statement-secretary-mnuchin-administrator-carranza-paycheck-protection-program-economic-injury (last visited August 22, 2025).

### C.      Congress Ratified the Corporate Group Rule with the Economic Aid Act

Moreover, Congress ratified the Corporate Group Rule when it passed the Economic Aid Act.  Congress expressly made second-draw PPP loans subject to "the same terms, conditions, and processes" as first-draw loans, "[e]xcept as otherwise provided" by Congress.  15 U.S.C. § 636(a)(37)(B).   Congress revised certain conditions applicable to first-draw PPP loans, including by lowering per-borrower employee caps for hotels, but left the Corporate Group Rule undisturbed.  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."  *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 75 (2d Cir. 2022) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).

The Second Circuit's ruling in *Pharaohs* is instructive.  There, the Second Circuit upheld SBA's application to the PPP of a preexisting Section 7(a) regulation that excluded adult-entertainment businesses from eligibility.  The Court concluded that, when Congress left that regulatory exclusion undisturbed in the CARES Act while relaxing others, that was a deliberate choice.  *Pharaohs*, 990 F.3d at 227.  *A fortiori*, when Congress expressly placed second-draw PPP loans under "the same terms, conditions, and processes" as first-draw loans, and when Congress revised the employee size caps applicable to hotels without disturbing the Corporate Group Rule, it ratified that rule.

### D.      The Corporate Group Rule Applies Alongside Congress's Waiver of the Affiliation Rules, It Does Not "Render [It] Wholly Superfluous"

Soho principally argues that "SBA exceeded its statutory authority when it issued the CGR because it violates the Affiliation Waiver" (Pl. Br. 9) and "render[s] the Affiliation Waiver wholly superfluous" (Pl. Br. 11), based on the false premise that "[h]otels meeting the eligibility criteria laid out by Congress, are no longer eligible for PPP loans under the CGR due to their

'common ownership' with other entities" (Pl. Br. 11).  Soho is mistaken.

To illustrate Soho's error, assume *arguendo* that Hotels A, B, and C are members of a single corporate group (for purposes of the Corporate Group Rule) and are affiliates of one another (for purposes of the Affiliation Rules); that each has 150 employees; and that, aside from their relationship with one another, each would otherwise be eligible for a second-draw PPP loan.[9]  Absent Congress's waiver of the Affiliation Rules, Hotels A, B, and C would all be ineligible to receive a second-draw PPP loan, in any amount, because their collective 450 employees would exceed the second-draw PPP's 300-employee cap.  With the waiver in place, Hotels A, B, and C would each be eligible to apply for, and receive, second-draw loans.  The Corporate Group Rule does not change this; it simply sets a maximum aggregate loan amount of $4 million on any second-draw loans provided to Hotels A, B, and C.  This does not "violate[] the Affiliation Waiver" (Pl. Br. 9) or "render the Affiliation Waiver wholly superfluous" (Pl. Br. 11), it simply sets an aggregate maximum loan amount for each corporate group, which applies alongside the maximums Congress set for each individual loan.

### E.    Soho's Argument that Congress Meant to Forbid Any "Affiliation-Based Limitations" Is Without Support

Soho acknowledges the possibility that the Corporate Group Rule may not "directly contradict the Affiliation Waiver," and then argues that the Corporate Group Rule nevertheless "is contrary to the text, structure, and purpose of the CARES Act and Economic Aid Act."  (Pl. Br. 11.)  In particular, Soho argues that "it is implausible that Congress silently authorized the SBA to add affiliation-based limitations, like the CGR, to hotels when Congress expressly

---

[9] We use a hypothetical group of hotels, rather than Soho and its siblings, for a simple reason: Because the Affiliation Rules were waived as to hotels and the Corporate Group Rule operates according to different standards, SBA has not made a determination as to whether the other corporate entities within Soho's corporate group qualify as "affiliates" of Soho's for purposes of the Affiliation Rules.

specified that the affiliation-based rules would be limited to non-hotel entities applying for a PPP loan." (Pl. Br. 11.) The thrust of Soho's argument appears to be that, when Congress waived the Affiliation Rules for hotels, it evinced an intent to prevent any consideration by SBA of other entities connected to a hotel applying for a PPP loan.

That is a gross misreading of the waiver, and Soho offers no support for it. As explained above, the Corporate Group Rule is fully consistent with the waiver, which made PPP funding available to hotels with large affiliates; the rule simply set a maximum aggregate loan amount for any corporate group—whether it included hotels or not—as a way to allocate limited funds in keeping with Congress's purpose.

### F. Soho's Argument that SBA Lacked Authority to Impose Additional PPP Eligibility Restrictions Is Wrong and Has Been Rejected by the Second Circuit

Soho also argues that SBA was barred from applying regulatory eligibility criteria to PPP applicants, because Congress provided "exhaustive instructions to the SBA regarding eligibility for PPP loans." (Pl. Br. 12.) Soho asserts that "Congress meant what it said: any business that satisfies the statutory conditions is eligible to receive a PPP loan," suggesting that SBA had no authority to supplement those statutory eligibility conditions through regulation. (Pl. Br. 12.) To the contrary, as explained above, Congress fully intended for SBA to use its broad rulemaking powers, supplemented by the emergency rulemaking authority Congress provided with the CARES Act and Economic Aid Act, "to fill up the details" of the PPP, *Loper Bright*, 603 U.S. at 395. Moreover, the Second Circuit has rejected Soho's argument, upholding SBA's application of a regulation to render certain applicants ineligible for the PPP. *See Pharaohs*, 990 F.3d at 226–228 (upholding SBA regulation excluding adult-entertainment businesses from PPP eligibility); *cf. Springfield Hosp.*, 28 F.4th 403 (upholding SBA regulation barring debtors in bankruptcy from PPP eligibility, based on interpretation of bankruptcy code non-discrimination

provision).

Soho asserts that "many courts have recognized that the SBA has no authority to create new restrictions on PPP eligibility that are not found in the statute," and invites "[t]his Court [to] reach the same result." (Pl. Br. 16.) Soho then cites several cases in which other courts have struck down SBA's exclusions of adult-entertainment businesses and debtors in bankruptcy from PPP eligibility. (*Id.*) However, Soho does not acknowledge that the Second Circuit has squarely rejected these rulings, upholding SBA's exclusions on both points. *See Pharaohs*, 990 F.3d at 226–228; *cf. Springfield Hosp.*, 28 F.4th at 408.

### G.    SBA's Slight Tardiness Did Not Invalidate its Exercise of its Emergency Rulemaking Authority

Finally, Soho argues that the Corporate Group Rule should be struck down because SBA missed Congress's deadline for emergency rulemaking under both the CARES Act and Economic Aid Act.[10]  (Pl. Br. 17-18.)  The Supreme Court has repeatedly rejected similar challenges to tardy agency action since its decision in *Brock v. Pierce County*, 476 U.S. 253 (1986), when it held a Congressional deadline was meant to "spur [the agency] to action, not to limit the scope of [its] authority, so that [its] untimely action was still valid." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003).  As the Court explained in a 2003 opinion, "since *Brock*, [the Supreme Court has n]ever construed a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later." *Id.*

The Supreme Court has explained that, "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Id.* at 159 (internal quotation marks omitted).  This is

---

[10] Technically, only SBA's regulation applying the Corporate Group Rule to second-draw loans should be at issue here.

particularly true where the agency's "responsibility . . . was substantial, the ability to complete it [the deadline] was subject to factors beyond [the agency's] control," and a contrary result "would prejudice the rights of the taxpaying public." *Id.* at 158 (internal quotation marks omitted). And for statutes passed after the Court's 1986 decision, the Supreme Court has "presume[ed]" that "Congress was . . . aware that [courts] do not readily infer congressional intent to limit an agency's power to get a mandatory job done merely from a specification to act by a certain time." *Id.* at 160.

Here, it would be an absurd result—and clearly contrary to the intent of Congress—if the CARES Act's and Economic Aid Act's 15- and 10-day deadlines, motivated by the dire need for emergency rulemaking during the pandemic, led courts to invalidate those rules because SBA needed a few extra days or weeks to establish the details necessary to implement a program to award hundreds of billions of dollars to millions of borrowers. *Accord Accordius Health*, 2025 WL 1503583, at *8; *Forest View*, 2024 WL 5247837, at *10.

## II.    The Court Should Uphold SBA's Interpretation of its Corporate Group Rule

Soho does not dispute the ALJ's factual determination that Rosen and Fuchs have formed a partnership-in-fact, or that as part of that partnership Rosen and Fuchs own six corporate entities that each applied for, and received, a second-draw PPP loan. (OHA 23–26; Pl. Br. 18–24.) Instead, Soho argues that SBA misapplied its own Corporate Group Rule when it determined that a partnership-in-fact and the corporate entities it owns constitute a "corporate group." (Pl. Br. 18–24.) SBA's interpretation is correct and, to the extent there is ambiguity, the Court should defer to the agency's interpretation of its own rule.

### A.    Under the Plain Meaning of the Regulation, A Partnership-in-Fact Can Constitute a "Common Parent" of the Businesses it Owns

The Corporate Group Rule defines a "corporate group" broadly as " businesses . . . [that]

are majority owned, directly or indirectly, by a common parent." 85 Fed. Reg. at 26,325; *see* 86 Fed. Reg. at 3720.  The ALJ found, based on substantial evidence, that Rosen and Fuchs formed a partnership-in-fact, and that this partnership is a "common parent" of Soho and six other businesses.  (OHA 23-26.) There is no question that New York law recognizes partnerships-in-fact.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5439455, at *4 (2d Cir. Aug. 24, 2023) (summary order) (collecting cases), *cert. denied sub nom. Sage v. Picard*, 144 S. Ct. 2607 (2024).[11]  The Corporate Group Rule defines a corporate group broadly, to include businesses owned even "indirectly" by a common parent, and there is nothing in the plain text of the regulation that suggests a *de facto* partnership could not be such a parent.

　　　　Soho offers no such reason.  Soho asserts that "[t]here can be no reasonable dispute that a 'corporate group' is commonly understood to be a collection of companies that are controlled by a parent company" (Pl. Br. 19), but SBA did not use the term "common parent *company*" in its regulations, opting not to limit the phrase "common parent."  (And in any case, Black's Law Dictionary defines "company" to include a "partnership" as well as an "organized group of persons, whether incorporated or not."  Black's Law Dictionary (11th ed. 2019).)  SBA wrote the Corporate Group Rule expansively to encompass even "indirect" ownership, and accordingly it chose the broad terms "businesses" and "common parent."  Under the plain meaning of the regulation, a partnership-in-fact controlling multiple corporate entities qualifies as a "common parent" of a corporate group.  *See Forest View*, 2024 WL 5247837, at *12 ("[T]he first thing to note about the term 'common parent' is that it places no limit on the *type* of entity that can

---

[11] New York courts look to "the conduct, intention, and relationship between the parties," *id.* (quoting *Czernicki v. Lawniczak*, 74 A.D.3d 1121, 1124 (2d Dep't 2010) (internal citations omitted)), including "the sharing of profits and losses, as well as the ownership, joint management, and control of partnership assets," *id.* (citing *Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (2d Dep't 1988)).

comprise a 'parent.' Without some indication that the SBA intended to limit 'common parent' beyond its plain text, the Court presumes the rule to appl[y] to common parents of *all types*, including the implied partnership between Blisko and Gubin Enterprises. If the SBA wanted to limit the rule only to certain legal entities like corporations, it could have done so expressly.").

### B. If Ambiguous, the Corporate Group Rule Should Be Interpreted in Accordance with SBA's Intent to Broadly Allocate PPP Funds

If the Court finds the text ambiguous on this point, it should then look to SBA's intent. *See Kisor v. Wilkie*, 588 U.S. 558, 569–70 (2019) (directing courts to utilize the standard methods of statutory interpretation when interpreting agency regulations). The PPP was intended to provide emergency funds to businesses struggling during the pandemic, and, as SBA explained in its rulemaking, the Corporate Group Rule was meant to broadly allocate limited PPP funds for that purpose. 85 Fed. Reg. at 26,325; 86 Fed. Reg. at 3716. Common ownership was the touchstone for SBA's Corporate Group Rule, 85 Fed. Reg. at 26,325; 86 Fed. Reg. at 3720, since a common parent can finance the businesses it owns. SBA promulgated the Corporate Group Rule to prevent any one corporate group from receiving an outsize amount of PPP loans (more than twice the statutory maximum for a single loan), so that limited PPP funds could instead be spread across a greater number of independent groups. An interpretation of the Corporate Group Rule that captures common ownership of all kinds, regardless of form, best fits SBA's intent. *See Forest View*, 2024 WL 5247837, at *13 ("[A] more expansive reading of 'common parent' comports with the SBA's goal to 'preserve the limited resources available' and 'promote the availability[] of PPP loans to the largest possible number of borrowers[.]'").

### C. In the Event of Genuine Ambiguity, SBA's Interpretation of the Corporate Group Rule Is Entitled to Deference

If, after exhausting the standard methods of statutory interpretation including consideration of SBA's intent, the Court still finds the Corporate Group Rule to be "genuinely

ambiguous," *Kisor*, 588 U.S. at 563, it should then defer to SBA's interpretation of the rule it recently promulgated.

The Supreme Court has long recognized *Auer* deference, pursuant to which courts defer, in appropriate circumstances, to an agency's interpretation of its own regulations. *See id.* at 569–70.[12] This deference is "rooted in . . . a presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities." *Id.* at 569-70. Moreover, "the agency that promulgated a rule is in the better position to reconstruct its original meaning," and "resolving genuine regulatory ambiguities often entails the exercise of judgment grounded in policy concerns." *Id.* at 570 (internal quotation marks omitted). Where, as here, Congress broadly delegated to SBA authority to fill in the details of the PPP through rulemaking, little time has passed since the rule was promulgated, and the proper contours of the rule turn on policy judgments about the best way to allocate PPP funding, *Auer* deference is particularly appropriate.

Soho argues that *Auer* deference to SBA's interpretation of the Corporate Group Rule as applied to partnerships-in-fact is inappropriate because it the agency's interpretation is "merely an ad hoc statement that does not reflect the agency's views." (Pl. Br. 21.) It is true that "a court should decline to defer to a merely convenient litigation position or *post hoc* rationalizations advanced to defend past agency action against attack." *Kisor*, 588 U.S. at 579 (internal quotation marks omitted). However, far from being a "*post hoc* rationalization[]," the SBA interpretation at issue was the stated basis for the agency's denial of Soho's application for loan forgiveness

---

[12] Soho suggests that *Auer* may no longer be good law after *Loper Bright*, but "*Loper Bright* does not call into question, or address, deference to agency interpretations of their regulations." *Rappaport v. Guardian Life Ins. Co. of Am.*, No. 1:22-CV-08100 (JLR), 2024 WL 4872736, at *12 (S.D.N.Y. Nov. 22, 2024).

here.  (AR 24-26.)  SBA has consistently confirmed it to be the agency's position throughout the underlying administrative challenge (OHA 11-18), and has taken the same position in loan forgiveness denials concerning partnerships-in-fact that were subsequently challenged in Illinois and North Carolina.  *See Accordius Health*, 2025 WL 1503583, at *9; *Forest View*, 2024 WL 5247837, at *12.

The two courts to consider challenges to SBA's application of the Corporate Group Rule to partnerships-in-fact have both upheld that application.  *See Accordius Health*, 2025 WL 1503583, at *9 ("[E]ven though Hyman and Zanziper have structured their joint enterprise so that in form each constituent LLC, viewed in isolation, is directly owned by the two of them individually, their *de facto* partnership is in substance the indirect owner of all 84 LLCs that sought PPP loans[.]"); *Forest View*, 2024 WL 5247837, at *12 (holding that partnership-in-fact constituted a "common parent," after reviewing dictionary definitions that "suggest that 'common parent' is defined by an entity's level of ownership or control over another entity, regardless of what legal form the controlling entity happens to take," as well SBA's intent).  This Court should do the same.

## CONCLUSION

For the foregoing reasons, the Court should deny Soho's motion for summary judgment and grant SBA's cross-motion for summary judgment on all of Soho's claims.

Dated:     New York, New York
           August 22, 2025

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney for the
                                        Southern District of New York

                              By:     _/s/ Jacob Lillywhite_____
                                        JACOB LILLYWHITE
                                        Assistant United States Attorney
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        (212) 637-2639
                                        jacob.lillywhite@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,517 words.