UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOHO HOTEL OWNER LLC,<br><br>  Plaintiff,<br><br>   v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION *et al.*,<br><br>  Defendants. | No. 25 Civ. 2838 (JSR) |

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639

JACOB LILLYWHITE
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT** .................................................................................................................................2

I.   **The Corporate Group Rule Did Not "Eliminate" the Affiliation Waiver** ....................2

II.  **The Plain Language of the Waiver Expressly Limits It to the Affiliation Rules** .........3

III. **Congress Ratified the Corporate Group Rule in the EAA** ............................................4

IV.  **SBA Correctly Concluded that the Rosen-Fuchs Partnership Constitutes a "Common Parent" of the Many Businesses It Owns** ......................................................6

   A.  **SBA's Finding that the Rosen-Fuchs Partnership Constitutes a "Common Parent" Is Amply Supported by the Evidence** ................................6

   B.  **SBA Correctly Interpreted Its Own Corporate Group Rule to Encompass Partnerships-in-Fact** ............................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*35 State St. Hotel Partners, LLC v. Loeffler*,
   No. CV 24-747 (JDB), 2025 WL 870535 (D.D.C. Mar. 20, 2025) .................................. 1, 3, 9

*Accordius Health at Asheville, LLC v. SBA*,
   No. 1:23-CV-00129-MR, 2025 WL 1503583 (W.D.N.C. Apr. 8, 2025) ........................... 1, 8, 9

*Aetna Life Ins. Co. v. Big Y Foods, Inc.*,
   52 F.4th 66 (2d Cir. 2022) .............................................................................................. 5

*Celebrity of Springfield, LLC v. SBA*,
   No. 2:23-CV-01720-WJM-CLW, 2025 WL 1276104 (D.N.J. May 2, 2025) .................... 1-2

*Forest View Rehab. & Nursing Ctr., LLC v. SBA*,
   No. 24 CV 1490, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024) ....................................... 1, 8, 9

*Jama v. ICE*,
   543 U.S. 335 (2005) ....................................................................................................... 6

*Isaacs v. Bowen*,
   865 F.2d 468 (2d Cir. 1989) ........................................................................................... 5

*Labor Council for Latin Am. Advancement v. EPA*,
   12 F.4th 234 (2d Cir. 2021) ........................................................................................... 6, 7

*Lorillard v. Pons*,
   434 U.S. 575 (1978) ....................................................................................................... 5

*N. Haven Bd. of Ed. v. Bell*,
   456 U.S. 512 (1982) ....................................................................................................... 6

*Pharaohs GC, Inc. v. SBA*,
   990 F.3d 217 (2d Cir. 2021) ........................................................................................... 3, 5, 6

*Springfield Hosp., Inc. v. Guzman*,
   28 F.4th 403 (2d Cir. 2022) ........................................................................................... 3

**Statutes and Regulations**

15 U.S.C. § 636(a)(36)(d)(iv) ................................................................................................. 3

15 U.S.C. § 636(a)(37)(B) ................................................................................................................ 5

13 C.F.R. §§ 121.103 ................................................................................................................. 3, 4

Business Loan Program Temporary Changes; Paycheck Protection Program—
    Requirements—Corporate Groups and Non-Bank and Non-Insured Depository
    Institution Lenders,
    85 Fed. Reg. 26,324 (May 4, 2020) .................................................................................... 8, 9

Business Loan Program Temporary Changes; Paycheck Protection Program Second
    Draw Loans,
    86 Fed. Reg. 3712 (Jan. 14. 2021) .......................................................................................... 8

SBA[1] respectfully submits this reply memorandum of law in further support of its cross-motion for summary judgment on all claims. *See* Dkt. No. 18.

## PRELIMINARY STATEMENT

Soho's opposition chiefly rests on its assertion that the Corporate Group Rule was "in direct contravention of the Affiliation Waiver" and that the Corporate Group Rule "eliminate[d] the [] Affiliation Waiver." (Pl. Opp. 1, 4, 5.) As described in SBA's opening brief (SBA Br. 16-17) and below, Soho is mistaken. Soho also argues that when Congress waived the Affiliation Rules for hotels, it forbade SBA from considering a hotel's relationship to commonly-owned entities for any purpose when awarding PPP funds, but the plain language of the waiver makes clear Congress simply waived the Affiliation Rules. And Soho has no answer to Congress's ratification of the Corporate Group Rule when it passed the EAA. Lastly, Soho argues the Corporate Group Rule should not apply to it because a partnership-in-fact cannot constitute a "common parent," but fails to marshal any meaningful arguments in support.

Soho's arguments have been considered and uniformly rejected by four district courts. *See 35 State St. Hotel Partners, LLC v. Loeffler*, No. CV 24-747 (JDB), 2025 WL 870535 (D.D.C. Mar. 20, 2025) (upholding Corporate Group Rule as applied to hotels and rejecting argument that it violated Congress's waiver of the Affiliation Rules); *Accordius Health at Asheville, LLC v. SBA*, No. 1:23-CV-00129-MR, 2025 WL 1503583 (W.D.N.C. Apr. 8, 2025) (upholding Corporate Group Rule and SBA finding that partnership-in-fact constituted a "common parent"); *Forest View Rehab. & Nursing Ctr., LLC v. SBA*, No. 24 CV 1490, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024) (same); *Celebrity of Springfield, LLC v. SBA*, No. 2:23-CV-

---

[1] This memorandum uses defined terms from Defendants' opening brief. *See* Dkt. No. 19 ("SBA Br.").

01720-WJM-CLW, 2025 WL 1276104 (D.N.J. May 2, 2025) (affirming SBA denial of loan forgiveness under Corporate Group Rule).  For the reasons set in SBA's opening brief and below, this Court should do the same.

## ARGUMENT

**I.     The Corporate Group Rule Did Not "Eliminate" the Affiliation Waiver**

Soho twice asserts in its opposition that the Corporate Group Rule "eliminate[d] the [] Affiliation Waiver." (Pl. Opp. 4, 5.)  This is easily proven false.  As described above, and in SBA's opening brief (SBA Br. 16-17), all business concerns with a large network of affiliates would have been ineligible for PPP funds without Congress's waiver of the Affiliation Rules.  Because of the waiver, certain businesses, including small hotels, were eligible for PPP funds.  The Corporate Group Rule did not reverse this; it simply capped the aggregate PPP awards to eligible businesses within a corporate group, to allocate limited PPP funds as widely as it could.

In its opening brief, SBA set out a hypothetical to demonstrate Soho's error.  (SBA Br. 17.)  In its opposition, Soho does not dispute that, absent the waiver of the Affiliation Rules, Hotels A, B, and C could not have received any PPP funding, or that under the Corporate Group Rule these three hotels could be awarded, collectively, up to $4 million in second-draw PPP funds.  (Pl. Opp. 9.)  As $4 million is more than $0, this hypothetical shows that the Corporate Group Rule did not "eliminate[] the [] Affiliation Waiver." (Pl. Opp. 4, 5.)

Instead, Soho argues that, "if Hotels A and B each received $2 million loans," then "the otherwise eligible hotel per Congress's requirements (i.e., Hotel C) is no longer eligible for the PPP loan." (Pl. Opp. 9.)  First, the Corporate Group Rule capped award amounts, it did not restrict borrower eligibility for the Paycheck Protection Program, so it is not correct to say that Hotel C would be rendered ineligible for the PPP.  Second, even assuming, *arguendo*, that Soho

2

could correctly characterize Hotel C as "no longer eligible" in this scenario, that would be irrelevant. To the extent Soho is suggesting that Congress intended the eligibility requirements it set out in the CARES Act and the EAA to be the only ones and to forbid SBA from applying regulatory exclusions, the Second Circuit has already rejected this argument. *See Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 226–28 (2d Cir. 2021); *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022). Because of Congress's waiver of the Affiliation Rule, the common owner of Hotels A, B, and C could choose to apply for up to $4 million in PPP funds across those three business concerns. That SBA capped the aggregate awards at $4 million through the Corporate Group Rule did not undo this waiver. SBA enacted the Corporate Group Rule to further, not frustrate, Congress's intent, allocating scarce PPP funds as widely as possible.

## II. The Plain Language of the Waiver Expressly Limits It to the Affiliation Rules

In its opposition, Soho repeatedly insists that the "plain language" of Congress's waiver of the Affiliation Rules somehow prohibited SBA from promulgating the Corporate Group Rule. (Pl. Opp. 1, 3-4, 6-7.) In fact, the waiver is expressly limited to SBA's Affiliation Rules:

> Waiver of affiliation rules.—During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for [specified business concerns].

15 U.S.C. § 636(a)(36)(d)(iv). The only court to consider the Corporate Group Rule's application to hotels rejected Soho's arguments. *35 State St.*, 2025 WL 870535, at *7-8.[2]

---

[2] In a footnote, Soho asserts, misleadingly, that a "recent case [was] remanded to the SBA finding that application of the CGR was arbitrary and capricious as applied to a hotel group," and further that the court labeled the Corporate Group Rule as "unlawful," citing *Concessions HH, JV v. SBA*, No. 1:24-cv-01870-WMR, Dkt. No. 31 (N.D. Ga. Sept. 8, 2025) (slip. op.). (Pl. Opp. 4 n.2.) The *Concessions* court remanded not because SBA applied the Corporate Group Rule to a hotel, but because, without adequate explanation, SBA denied in full the borrower's request for loan forgiveness when (1) the borrower's corporate group had only received just over $3.4

3

While Soho does not expressly argue that the Corporate Group Rule is a "successor regulation" to the Affiliation Rules set out in 13 C.F.R. § 121.103, Soho suggests this, underlining "any" in the phrase "any successor regulation." (Pl. Opp. 1, 3.) The Corporate Group Rule is clearly not a "successor regulation" to the Affiliation Rules set forth in Section 121.1013: the Affiliation Rules, which set out in detail the rules by which affiliation is determined for purposes of SBA's programs, remain in force as codified at 13 C.F.R. § 121.103, and the Corporate Group Rule did not purport to replace or supersede those rules.

### III.  Congress Ratified the Corporate Group Rule in the EAA

Soho has no meaningful response to Congress's ratification of the Corporate Group Rule in the EAA. As the Supreme Court has taught, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 75 (2d Cir. 2022) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). Indeed, when the Second Circuit recently upheld SBA's application to the PPP of a Section 7(a) regulation that excluded

---

million in second-draw PPP loans—about $600,000 below the Corporate Group Rule's $4 million maximum—at the time of its application; and (2) SBA invalidated $2 million of that $3.4 million, so only approximately $1.4 million in valid second-draw PPP funds had been paid. *Id.* at 10-12.

And the court did not "label" or otherwise characterize the Corporate Group Rule as "unlawful." The court made clear it was "presum[ing] . . . that [SBA]'s interpretation of the CGR is valid" without reaching a decision and made no statement—even in *dicta*—to suggest that it believed the rule was unlawful. *Id.* at 9 & n.3. Soho quotes a portion of the background section of the court's opinion, where the court advised it would use the terms "Unlawful Corporate Group Maximum Rule, the Corporate Group Maximum Rule, or just the Corporate Group Rule" interchangeably, referring to them as "CGR." *Id.* at 4 n.2. In a heading in the background section of its opening brief, the petitioner had referred to the Corporate Group Rule as "the Unlawful Corporate Group Maximum Rule" in a manner that suggested this was the rule's name, rather than a characterization of its legality. *Id.* Dkt. 17-1 at 10 ("The SBA Issues the Unlawful Corporate Group Maximum Rule"). The court appears to have treated this as an alternative name for the rule, perhaps believing "unlawful" referred to the fact that the rule made it unlawful for a corporate group to apply for, and accept, funds in excess of the maximum.

adult-entertainment businesses, the Circuit presumed that Congress's decision to leave that prohibition undisturbed by the CARES Act while relaxing others was deliberate. *See Pharaohs*, 990 F.3d at 227.

Here, Congress expressly directed that, "[e]xcept as otherwise provided" by Congress, second-draw PPP loans would be subject to "the same terms, conditions, and processes" as first-draw loans. 15 U.S.C. § 636(a)(37)(B). That included the Corporate Group Rule. Congress even revised its waiver of the Affiliation Rules for hotels, lowering the employee cap. If, as Soho insists, the Corporate Group Rule "eliminate[d]" Congress's waiver (Pl. Opp. 4, 5), one would expect Congress to have clarified that when revising the waiver provision. Instead, Congress left the Corporate Group Rule undisturbed. These facts strongly support the presumption of ratification. *Cf. Isaacs v. Bowen*, 865 F.2d 468, 473-74 (2d Cir. 1989) ("[B]y not using the opportunity when amending the section to address the agency's interpretation, Congress must be presumed to have considered and approved the implementing regulations.").

Soho's only response is a non sequitur. First, Soho notes that ratification requires that "Congress reenact[] a statute without relevant change," and then—dropping the key word "relevant"—asserts "[the EAA] did not reenact the CARES Act without change." (Pl. Opp. 9.) The EAA did reenact the CARES Act's waiver of the Affiliation Rules without relevant change. The fact that Congress chose to alter other aspects of the CARES Act—including the employee size cap for the waiver itself—without changing the waiver language strengthens, rather than weakens, the case for ratification.

Second, Soho cites a ratification case, *Jama v. ICE*, 543 U.S. 335, 349 (2005), that considered whether a "supposed judicial consensus [was] so broad and unquestioned that [the Court] must presume Congress knew of and endorsed it." (Pl. Opp. 9.) Soho argues there was

5

no ratification here because there was "no judicial consensus," as "this issue has not yet been decided by a single circuit court of appeals." (Pl. Opp. 9.) However, SBA is not arguing for ratification based on a judicial consensus, but rather based on a regulation that SBA duly promulgated, on an emergency basis, at Congress's express direction. SBA published the Corporate Group Rule in the federal register, and it played a significant role in SBA's allocation of scarce PPP funds. "When an agency's statutory construction has been fully brought to the attention of the public and Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 (1982). Just as the Second Circuit presumed Congress was aware of SBA's regulation excluding adult-entertainment businesses from Section 7(a) when it passed the CARES Act, *see Pharaohs*, 990 F.3d at 227, Congress should be presumed to have been aware of the Corporate Group Rule when passing the EAA.

**IV.    SBA Correctly Concluded that the Rosen-Fuchs Partnership Constitutes a "Common Parent" of the Many Businesses It Owns**

    **A.    SBA's Finding that the Rosen-Fuchs Partnership Constitutes a "Common Parent" Is Amply Supported by the Evidence**

On APA review, an agency's finding should be upheld if it is supported by "substantial evidence." *Labor Council for Latin Am. Advancement v. EPA*, 12 F.4th 234, 244-45 (2d Cir. 2021). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and requires "less than a preponderance but more than a scintilla of evidence." *Id.* (internal quotation marks and citations omitted).[3]

---

[3] Because Soho did not dispute, in its opening brief, that Rosen and Fuchs had entered into a partnership-in-fact (Pl. Br. 18-24), SBA did not include this aspect of the APA standard of review in its own opening brief.

6

Before finding that the Rosen-Fuchs partnership constituted a "common parent," SBA reviewed thousands of pages of documents, including entities' tax returns, operating agreements, organization charts, and answers from Rosen-Fuchs entities to various questions.  (*See* OHA 25; Supp. AR 835-841 (exhibits to SBA's Appeal Analysis, dated November 4, 2024, reflecting Rosen and Fuchs' ownership of various entities); *see also* AR 256-3924, 3985-7015 (documents submitted by Rosen-Fuchs entities, including tax returns, operating agreements, organizational charts, and responses to SBA questions).)  Just among companies that applied for and received second-draw PPP loans, SBA found that, together and across many years, Rosen and Fuchs wholly owned five companies (including Soho) (each via a 50%/50% split); held a majority interest in a sixth and seventh company (via a 30%/30% split and a one-third/one-third split, respectively); and held a minority interest (via two 21.2038% interests) in each of an eighth and ninth company.  (OHA 25; Supp. AR 829-31.)  Recognizing that "a 'common parent' [may be] created by [individuals'] frequently occurring business relationships," SBA concluded that the Rosen-Fuchs partnership constituted such a "common parent" for purposes of the Corporate Group Rule.  (OHA 25-26; Supp. AR 827-832.)

Soho asserts that it "has never conceded that Aby Rosen and Michael Fuchs constitute a 'de facto' partnership under the law." (Pl. Opp. 10.)  Yet Soho did not challenge this finding in its opening brief (Pl. Br. 18-24), and even in its reply and opposition brief, Soho is careful not claim that Rosen and Fuchs are *not* partners (Pl. Opp. 10-12).  Below, in its submission to OHA, Soho referred to Rosen and Fuchs as "business partners." (OHA 9 (reproducing a portion of Soho's brief.)  In addition, as noted in SBA's opening brief (SBA Br. 10), Rosen and Fuchs publicly hold themselves out as having been "partners" for decades on the website for one of

their real estate companies.[4]  Soho does not engage with the evidence establishing Rosen and Fuchs's partnership, nor does it point to any evidence to the contrary.  (Pl. Br. 18-24; Pl. Opp. 10-12.)  Given Rosen and Fuchs's extensive and long-standing business relationship, through which they wholly own five companies, hold a majority interest in two more and a significant minority interest in another two—each time, with precisely equivalent individual ownership interests—SBA's finding that Rosen and Fuchs together form a "common parent" of the businesses they own is amply supported by the evidence and should be upheld.

### B. SBA Correctly Interpreted Its Own Corporate Group Rule to Encompass Partnerships-in-Fact

Both of the courts to consider the question have upheld SBA's interpretation of the Corporate Group Rule to reach partnerships-in-fact.  *See Accordius Health*, 2025 WL 1503583, at *9; *Forest View*, 2024 WL 5247837, at *12.

SBA drafted the Corporate Group Rule broadly, providing that "businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders, 85 Fed. Reg. 26,324, 26,325 (May 4, 2020); *see* Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3720 (Jan. 14, 2021).  SBA intended the general term "common parent" to sweep widely, in keeping with its reference to "direct[] or indirect[]" ownership and the agency's stated purpose of "promot[ing] the availability of PPP loans to the largest possible number of borrowers."  85 Fed. Reg. 26,324,

---

[4] *See* rfr.com/about-rfr/rfr-profile (last visited September 29, 2025) (referring to Rosen and Fuchs as the "[t]he two partners" who founded the company in 1991); rfr.com/about-rfr/history (last visited September 29, 2025) (describing Rosen and Fuchs as "life-long friends" who formed the company together in 1991 to "beg[i]n investing in New York real estate" and have been doing so ever since).

8

26,325. That this was SBA's intent in drafting this regulation is also demonstrated by the fact that, since promulgating the Corporate Group Rule just a few years ago (2020 and 2021), SBA has repeatedly interpreted the term "common parent" broadly. SBA did so throughout the administrative challenge in this matter (OHA 11-18), as well as in similar PPP loan forgiveness denials on the basis of partnerships-in-fact that were upheld in Illinois and North Carolina. *See Accordius Health*, 2025 WL 1503583, at *9; *Forest View*, 2024 WL 5247837, at *12.

Soho argues that *Accordius Health* and *Forest View* are "inapposite as they did not involve NAICS 72 hotel entities and the Affiliation Waiver at all." (Pl. Opp. 11.) It is true that neither court considered Soho's wholly independent arguments concerning the Affiliation Waiver (which were rejected by *35 State Street*), but both the *Accordius Health* and *Forest View* courts upheld SBA's determination that a partnership-in-fact constituted a "common parent" for purposes of the Corporate Group Rule. Both are squarely on point.

Soho also contends that "nowhere in the plain language of the [Corporate Group Rule] is there any text making the statutory term [sic] 'common parent' tantamount with 'partnership in fact.'" (Pl. Opp. 10.) But SBA's position is not that "common parent" is "tantamount" to a "partnership in fact," simply that there is no reason a partnership-in-fact cannot constitute a common parent of a group of businesses owned by that partnership. As the *Forest View* court noted, "the term 'common parent' . . . places no limit on the *type* of entity that can comprise a 'parent.'" 2024 WL 5247837, at *12.

Soho complains that "[n]othing about the SBA's explanation is clear" because SBA "never explains how [Soho] is majority owned indirectly by a common parent." (Pl. Opp. 10.) SBA's point, in highlighting that the Corporate Group Rule encompassed indirect ownership, was not that Soho is majority owned, indirectly, by a common parent, but rather that SBA's

9

decision to draft the Corporate Group Rule to reach indirect ownership evinced an intent to sweep broadly.  (*See* SBA Br. 21.)

Soho does not reprise its argument, in its opening brief, that "a 'corporate group' is commonly understood to be a collection of companies that are controlled by a parent company." (Pl. Br. 19.)  SBA had pointed out, in its prior brief, that (1) SBA chose not to use the term "common parent *company*" and (2) even if Soho's "underst[anding]" that a "corporate group" requires a "parent company" (Pl. Br. 19) were correct, Black's Law Dictionary includes partnerships-in-fact within the definition of "company."[5]  (SBA Br. 21-22.)

Soho argues that SBA's interpretation of "corporate group" is "impossibly overbroad," offering a hypothetical in which two individuals each own a one-third interest in three different businesses.  (Pl. Opp. 11.)  The key question is whether these two hypothetical individuals formed a partnership-in-fact.  If the evidence indicates they did so, there would be nothing "absurd" (Pl. Opp. 11) about finding that their partnership-in-fact constituted a "common parent" of the various businesses it owned and controlled.

Finally, Soho drops many of its objections to the application of *Auer* deference. (*Compare* Pl. Br. 21 *with* Pl. Opp. 11-12.)  Its sole argument now is that SBA's interpretation is unreasonable (Pl. Opp. 11-12), which should be rejected for the reasons set forth above.

## CONCLUSION

For the foregoing reasons, the Court should grant SBA's cross-motion for summary judgment on all of Soho's claims.

---

[5] In its opposition, Soho writes: "Confusingly, SBA notes that term [sic] 'company' is defined to include a 'partnership' but the term 'company' does not appear in the CGR."  (Pl. Opp. 10.) SBA was responding to Soho's use of the word "company" in Soho's argument that a "parent company" should be required for a corporate group.  (SBA Br. 21; *see* Pl. Br. 19)

Dated:     New York, New York
           September 29, 2025

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney for the
                                        Southern District of New York

By:    */s/ Jacob Lillywhite*
        JACOB LILLYWHITE
        Assistant United States Attorney
        86 Chambers Street, Third Floor
        New York, New York 10007
        (212) 637-2639
        jacob.lillywhite@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,340 words.